JAMES R. CLARK and WILLIAM NORMAN RICHARDSON *v.* STATE OF MARYLAND

[No. 205, September Term, 1968.]

*Decided February 11, 1969.*

*Alexander R. Martick* for appellant Clark and *Allan B. Rabineau* for appellant Richardson.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert C. Ozer, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Each appellant was found guilty by a jury in the Criminal Court of Baltimore of breaking a storehouse and stealing goods of the value of $5 and upwards and sentenced to six years "consecutive with any sentence for Violation of Parole."

Richardson claims error in that the trial court admitted evidence seized by an illegal arrest. Clark claims error in that the trial court admitted in evidence a statement made by him but not disclosed in an answer to a motion for discovery and a statement made by a witness. Both claim error in the refusal of the trial court to permit the issuance of a summons for a defense witness and in allowing the case to go to the jury.

## THE ARREST

The arrests of appellants were made without a warrant and the evidence now challenged was seized incident to the arrest. Richardson contends that as there was no probable cause for the arrests, the seizure was unreasonable and the evidence seized was therefore not admissible. But no motion was made for the suppression or exclusion of the evidence, Md. Rule 729b, nor was objection made at the trial by Richardson to the introduction of the evidence, Md. Rule 729c. Clark objected to the introduction of the evidence when offered but gave as the ground for the objection, when asked by the court, that "there was testimony of the officer there were fifteen people in the apartment on his first visit and about eight people in the apartment on the second visit and it is not shown who this merchandise belonged to, who it was, how it got to the apartment." The court considered the evidence to be "sufficient for the Jury to pass upon the question" and overruled the objection. Thus the question of the legality of the arrest was not tried and decided below and not being properly before us we do not consider it. Md. Rule 1085.[1]

1. Since in any event the objection of Clark did not preserve the question presented on appeal, we need not decide whether an objection made by one codefendant accrues to the benefit of the other codefendant. But see Md. Rules 522d and 725f.

## THE ADMISSION OF CLARK'S STATEMENT

Clark filed a pre-trial motion for discovery pursuant to Md. Rule 728. It included a request that he be furnished "with the substance of any and all statements made by him which the State proposes to produce as evidence against him, a copy of any written statement or statements made by him and the substance of an oral confession made by him including the time, manner of taking and place of such statement, confession or conversation and the witnesses thereto with their addresses who were then present." The State in answer to this request said, "None." At the trial Officer Earl Gillespie, testifying for the State, said that he was in an apartment in which Clark and Richardson were present. He observed "numerous bottles of whiskey, fifths, pints and half pints. It seemed to me maybe twenty-five to thirty, forty bottles on the floor by the kitchen table. I asked at this time where the whiskey came from and who it belonged to and at the time Mr. Clark said it was his whiskey and he had bought it." Counsel for Clark objected on the ground that the State, in answer to the motion for discovery, said that there was no statement of Clark which it proposed to produce as evidence against him. The court overruled the objection saying, "1 don't think this is a statement in the ordinary sense of the word or legal sense of the word. It is merely an answer to an inquiry made by the police officer at the apartment." Objection to the statement was not made on the basis that it was obtained during a custodial interrogation within the contemplation of *Miranda v. Arizona*, 384 U. S. 436, and we think it clear that it was not. See *Gaudio and Bucci v. State*, 1 Md. App. 455. Nor was it contended that it was not voluntarily made. See *Stewart v. State*, 232 Md. 318; *Crumb v. State*, 1 Md. App. 98. The only question presented on review is whether the failure of the State to disclose it in answer to the motion for discovery precluded its admission into evidence. Clark argues that its admission in the circumstances denied him due process of law in that "the State was allowed to surprise him" by the production of the statement which prevented a fair trial.

If the challenged statement was not discoverable under Rule 728, it was not inadmissible by the failure to disclose it. If it was

discoverable, the mere failure to disclose it did not preclude its admission.[2] There are no sanctions for non-compliance provided by the Rule or by statute.[3] See *Jones v. State,* 5 Md. App. 180. The main objectives of the Rule "are to assist the defendant in preparing his defense, and to protect him from surprise." *Mayson v. State,* 238 Md. 283, 287, citing *Cropper v. State,* 233 Md. 384. In the instant case Clark did not show below that he was surprised by the production of the statement nor did he request a continuance to enable him to prepare a defense against it. His objection to the admission of the statement was not a general objection but was made on the ground that the State had failed to disclose it, apparently on the assumption that this mere failure *per se* rendered it inadmissible. See Md. Rules 522d1 and 725f. In the circumstances we cannot say that the lower court erred in overruling the objection to the admission of the statement nor can we find that Clark was denied due process of law thereby.

---

2. Thus we need not decide at this time what "statements" of the defendant are discoverable within the meaning of §a2 of Rule 728. With respect to "statements" under Federal Rule 16 as amended, only "written or recorded statements of confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government" are discoverable. This provision obviates the problems inherent in § a2 of Md. Rule 728 arising from its lack of specificity.

3. Rule 728 was patterned after Federal Rule 16. *Kardy v. Shook, J.,* 237 Md. 524, 539; *Veney v. State,* 251 Md. 159, 164. At the time *Kardy* was decided, 15 February 1965, no sanctions were provided in the Federal Rule. Effective 1 July 1966 the Federal Rule was amended, substantially broadening its scope and setting out sanctions for failure to comply. Section g provides: "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

## THE ADMISSION OF A STATEMENT MADE
## BY A WITNESS

The appellants, jointly tried, were separately represented. A State's witness testified on direct examination that on 30 October 1967 she had been in the apartment of one June Cowan. The appellants came in sometime after her arrival about 1:25 A.M. and thereafter left. They and another person named Melvin Henson came back about 4:00 A.M. She was in the bedroom and heard a knock on the door. A policeman came in and then went outside with Henson. While they were outside she heard Richardson say, "Let's get rid of this (bottles of whiskey) before the police comes back and asks about the burglary." This testimony came in without objection. At the conclusion of her direct testimony she was cross-examined by Clark's attorney and then by Richardson's attorney. Richardson's attorney, in the cross-examination, read from a statement the witness had previously given the police, attempting to show that she had changed her "story." The statement contained the remark made by Richardson overheard by the witness to which she testified on direct examination and in the opinion of the court "included practically everything she testified to but with some more details with what happened before and after." The statement was offered by Richardson and over objection by Clark was admitted "as to Richardson only." The court so instructed the jury in its charge. On appeal Clark claims that the admission of the statement of the witness, even though it was as to Richardson only and the jury were so instructed, was reversible error under *Bruton v. United States,* 391 U. S. 123, 88 S. Ct. 1620. Although *Bruton* must be given completely retroactive application, *Roberts v. Russell,* 392 U. S. 293, *Smithson v. State,* 5 Md. App. 378, Clark's reliance on Bruton is ill-placed. We thought it clear in *Lipscomb v. State,* 5 Md. App. 500, 506 "that the constitutional predicate underlying *Bruton* is the Sixth Amendment right of an accused to confront and cross-examine the witnesses against him" which right is applicable to State prosecutions. See *Pointer v. Texas,* 380 U. S. 400. The instant case is unlike *Bruton,* however. Here the challenged statement was not that of a co-defendant, the witness who gave the statement did testify at the trial and was cross-examined by Clark.

Clark's Sixth Amendment right to confront and cross-examine the witness was not violated; the rationale of *Bruton* is not applicable to the facts here. The statement was offered by Richardson, admitted only as to him and the jury so instructed. In *Delli Paoli v. United States*, 352 U. S. 232, the Court said, at 242, "Unless we proceed on the basis that the jury will follow the court's instructions where those instructions .are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense." Although *Bruton* overruled *Delli Paoli* to the extent that in the context of the denial of confrontation and cross-examination the risk "that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored," 88 S. Ct. 1627, it said,

> "We agree that there are many circumstances in which this reliance (that the jury will follow the court's instructions) is justified. Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions, instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' " 88 S. Ct. at 1627.

Assuming that the statement was not properly admissible as to Clark,[4] we find no reversible error in the circumstances.

### THE REFUSAL TO CONTINUE THE CASE TO SECURE THE PRESENCE OF A DEFENSE WITNESS

After the State rested its case in chief the appellants elected not to testify. Richardson offered no evidence. One witness testified on behalf of Clark and the case went over to the next day. The next morning, out of the presence of the jury, the appellants requested that they "be allowed either a summons

---

4. The challenged statement was in substance the same as the direct testimony of the witness which came in without objection. The statement may have been merely cumulative in any event.

and/or a bench warrant be issued for the production of a witness, Georgianna Princie." Clark's attorney told the court that his client "called me at home about 10:00 o'clock last night, saying he finally located the witness who lived at a different address. I talked to someone on the phone represented to me to be Georgianna Princie and she gave me information which would be valuable rebuttal to the testimony of Katherine Walls. I would like to have the opportunity to produce this witness in court to testify in this matter before the case proceeds any further." Richardson's attorney made the same request. Both said they had no other testimony to offer. The court refused to continue the case, saying:

> "The name of this witness has been known to the State and to both Defendants ever since the alleged offense occurred in October 1967. The name of Miss Princie was listed as a witness by the State in its Answer to Interrogatories on Motion for Discovery filed by the Defendant Clark and in addition to that, it seems clear from the evidence Miss Princie was known to Clark even prior to the alleged offense. Since the name of this witness has been known to him for at least several months, it seems to me it is too late at this stage after all the testimony has been concluded and the case is ready to go to the jury for the Court further to delay the trial and hold up the proceedings to obtain a witness who has been known to the Defendants, as I have said, for at least several months. It seems to me it is too late for them to go out and try to find witnesses they could have found during this long interval of time. For that reason the Court declines to delay the case and to issue a warrant for the arrest of Miss Princie to bring her in as a witness."

In reply to the observation of counsel that the case had been postponed on 29 December 1967 because of the failure of the State's witness, Katherine Walls, to appear, the court said:

> "There are two answers to that argument. Number one, the case was postponed on December 29, 1967 because Mrs. Walls did not at that time appear as a

witness. That very action, however, resulted in the release of Clark from jail. He has now been at liberty for almost four weeks, and, therefore, had an added opportunity to locate Miss Princie. The second reason is that the Court signed warrants to bring in Mrs. Walls prior to the beginning of the trial of this case and if your request had been made prior to the beginning of the trial or even during the trial of the case and before the testimony had been concluded, the Court would issue such a warrant. The basis of the ruling is that the request comes too late at the conclusion of all the evidence in the case, based upon a request the Court go out and locate defense witness whose identity has been known to both Defendants at least since October of 1967."

The appellants had the right to have a summons issued commanding the witness to attend and give testimony, Md. Rule 731a, and upon proper showing the fees to which the witness was entitled and costs incurred would be payable in the same manner as with a State's witness, Rule 731b. The appellants had not exercised the right. The witness desired could not be proceeded against as in contempt because no summons had been served upon her. Rule 731c. And a bench warrant could not be issued for like reason. Thus the question is whether the court abused its discretion in refusing to continue the trial to enable the appellants to have a summons issued. To show an abuse of discretion and prejudice for failure to continue a case because of the absence of a witness, the party requesting the continuance should show that he had reasonable expectation of securing the evidence of the absent witness within some reasonable time, that the evidence was competent and material, that he believed the case could not be fairly tried without it, and that he had made diligent and proper efforts to secure the evidence. *Boone v. State,* 2 Md. App. 80. The appellants did not meet these requirements. We note that they made no proffer of the evidence desired and the only attempt to show that it was competent and material was counsel's statement that it would be "valuable rebuttal." There are no mechanical tests for deciding when a de-

nial of a continuance is so arbitrary as to violate due process; the answer must be found in the circumstances present in a given case. *Walter v. State,* 4 Md. App. 373. In the circumstances here we are unable to say that the court abused its discretion or that there was prejudice to the appellants. See *Jackson v. State,* 214 Md. 454. We find no reversible error in the action of the trial court.

## THE SUFFICIENCY OF THE EVIDENCE

We review the sufficiency of the evidence in this case to determine whether the lower court erred in denying the appellants' motions for judgment of acquittal made at the close of all the evidence. *Williams v. State,* 5 Md. App. 450. Clark's argument on the point goes only to his criminal agency. As he does not dispute the proof of the *corpus delicti,* the evidence that he said the whiskey, stolen from the broken storehouse, was his, was sufficient to allow his case to go to the jury. See *Reagan v. State,* 2 Md. App. 262; *Allen v. State,* 2 Md. App. 740. That he said he bought it was a matter of his credibility and for the determination of the jury as was the credibility of the witness Katherine Walls and the weight of her testimony. *Jones v. State,* 5 Md. App. 180; *David v. State,* 1 Md. App. 666.

Richardson's argument on the point also goes to his criminal agency and he does not claim that the *corpus delicti* was not established. He alleges that although he and the stolen property were together in the apartment, this was not sufficient to establish his guilt as others were also present. By the testimony of Officer Gillespie, he visited the apartment at 1821 West Pratt Street three times on the morning of the crime. The first time, about 2:30 A.M. it was in response to a complaint about noise. He saw the appellants and observed only beer in the apartment. The second time, between 4:00 A.M. and 5:15 A.M. was the result of a report received by him that "three white males, one known as Melvin Henson, had been carrying packages across the street of Pratt Street, ducking into 1821 when there was no traffic, no one seen on the street, they would wait and run into the alleyway with the packages * * * A person told us they had observed these three males at a towing truck and seen them take a crowbar out of the tow truck and seen them darting

across the road with these packages * * * to the doorway of 1821 West Pratt Street." [5] The broken storehouse, a tavern, was located at 1701 Frederick Avenue. The officer knew Henson and had seen him in the apartment on his first visit. The officer with other officers "staked out" where they could observe 1821 West Pratt Street but there was no more activity. Gillespie then went to the apartment and asked for Henson. He was admitted and saw 25 to 40 bottles of whiskey, bearing certain markings, "stacked neatly on the floor against the wall." They checked the car lot where the tow truck was parked, found nothing disturbed, told Henson ("he was a neighborhood boy,") to put the crowbar back ("that's all we thought was gone") and "Henson went on his way and I went on mine." About 5:15 A.M. he responded to a call to go to the tavern at 1701 Frederick Avenue. The tavern had been broken into. Whiskey bottles in the tavern contained the same kind of markings made with a "dull pen"—the price, sales tax and total was on each label—as he had seen on the bottles in the apartment. He went back to the apartment, found four bottles of whiskey and vodka,[6] cigars of the same brand as taken in the burglary and a jar of sausages taken in the burglary. Eight people in the apartment were arrested, including the appellants.[7] The testimony of Katherine Walls corroborated the testimony of the officer in the essential details. She said the appellants came to the apartment about 2:00 A.M. At that time there was only beer in the apartment. Thereafter the appellants and Henson left the apartment. She heard them come back about 4:00 A.M. She was in the bedroom "laying down." She got up and

5. This evidence came in before the jury without objection. There had been evidence received out of the presence of the jury on the issue of the legality of the arrest.

6. The bottles were identified by the owner of the tavern as his property and as having been stolen. He said that "all the bottles on my shelf was taken off." He further testified that $15 in change was taken, cigars valued at $2.50 and about $3.00 worth of hot dogs. It was established that the whiskey and vodka recovered had a value of over $5.00.

7. Henson was not then in the apartment. A warrant was issued for his arrest, but at the time of the trial he had not been apprehended.

"looked and it was whiskey and cigars there." A police officer knocked on the door and was admitted. The officer and Henson left. Richardson said, "Let's get rid of this before the police come back and asks about the burglary." When the police came back to ask about the burglary all but four bottles had been "gotten rid of."

Applying the test whether the evidence either shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged, see *Williams v. State, supra,* at 459, to the evidence before the lower court, we have no difficulty in determining that it did not err in denying the motions for judgment of acquittal made by the appellants. See *Boswell v. State,* 5 Md. App. 571, with reference to the inference of guilt which arises from the possession of recently stolen property. Richardson also argues that Katherine Walls was an accomplice and that her testimony was not corroborated as required. The point was not tried and decided below and is not properly before us. Md. Rule 1085. However, even if she be considered to be an accomplice, (but see *Burley v. State,* 5 Md. App. 469), there was other evidence tending to show that Richardson was identified with the perpetrators of the crime or had participated in the commission of the crime itself. *Boone v. State,* 3 Md. App. 11, 19-20.

*Judgments affirmed.*