# CHARLES LEE DUDONIS *v.* STATE OF MARYLAND

[Nos. 224 & 300, September Term, 1969.]

*Decided March 31, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Edward J. Angeletti* (*John D. Hackett* on the brief) for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles*

*E. Moylan, Jr., State's Attorney for Baltimore City,* and *Stephen Montanarelli, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

This is an appeal from two convictions in the Criminal Court of Baltimore, consolidated with our permission; Appeal #224 being a conviction upon Indictment No. 5721/66 on June 12, 1967 after a plea of guilty to the unauthorized use of an automobile (Judge Charles R. Harris presiding) ; and Appeal #300 being a conviction by a jury upon Indictment No. 4138/67 on November 10, 1967 of breaking and stealing goods to a value of $5.00 or more (Judge William J. O'Donnell presiding). The appellant, Charles Lee Dudonis, was sentenced to terms of three years and five years, respectively, the terms to run consecutively. Appellant presents three questions for consideration by this Court:

1) Did not the trial courts err in finding appellant competent to stand trial on June 12, 1967 and on November 9 and 10, 1967?
2) Was the evidence in Appeal #300 sufficient to convict?
3) Did not the trial court err in Appeal #300 in not granting a continuance to permit a defense witness to testify?

## I

Appellant's first contention goes to his competency to stand trial. The test to be applied is whether the lower court, from the testimony before it, could determine beyond a reasonable doubt that the accused was able to understand the nature or object of the proceedings against him and to assist in the defense. *Rozzell v. State,* 5 Md. App. 167, 245 A. 2d 917. See *Strawderman v. State,* 4 Md. App. 689, 244 A. 2d 888. At appellant's trial on June 12, 1967, at which he entered a guilty plea to the third count of the indictment, namely, unauthorized use of an automobile, the issue of incompetency was not raised.

After hearing the testimony, Judge Harris agreed to a pre-sentence investigation of the appellant and he was released on bond. A probation report was submitted to Judge Harris on July 13, 1967, and thereafter he ordered that appellant be examined by the Medical Service of the Supreme Bench. An examination was made on August 16, 1967 by Dr. Renate M. Kniffin and her report was submitted to Judge Harris on September 5, 1967. The report revealed that there was no evidence of psychosis or organic impairment and that appellant had good, average intelligence but his judgment appeared at times quite limited. After receiving this report, Judge Harris continued appellant's bond until the outcome of another charge against him could be determined. Thereafter, on September 16, 1968, appellant sought to withdraw his guilty plea by the presentation of newly discovered evidence.

At appellant's trial on November 9 and 10, 1967, the issue of incompetency to stand trial was not raised. On October 24, 1968, at the hearing on the motion for a new trial, appellant presented newly discovered evidence relating to his conviction of breaking and stealing goods to the value of $5.00 or more. The newly discovered evidence in both cases consisted of the testimony of Dr. Ian Mackay, a staff psychiatrist at the Clifton T. Perkins State Hospital, who had examined the appellant at Perkins. The record reveals that on November 15, 1967, five days after appellant's conviction in Appeal #300, he had a seizure while in the city jail and was transferred to Perkins where Dr. Mackay examined him on November 20, 1967. At the hearing on September 16, 1968, Dr. Mackay testified that appellant was suffering from catatonic schizophrenia. Dr. Mackay stated that at the time of his first interview with appellant, the subject was completely divorced from reality. Dr. Mackay familiarized himself with appellant's medical history and reached a conclusion that prior to the time of the interview he was not competent to stand trial and probably not mentally responsible for any prior criminal acts. In

response to further defense examination, Dr. Mackay stated "He might have been competent. If you ask me as a physician, a psychiatrist, whether or not he was competent I would say no." Upon cross-examination, he stated it was probable that appellant was incompetent in June 1967. He further stated that he had seen appellant between 20 and 40 times at Perkins.

Judge Harris found that appellant was competent to stand trial on June 12, 1967, and denied the motion to have his guilty plea withdrawn. In arriving at his conclusion, Judge Harris emphasized the care that he had exercised before accepting the guilty plea. He held the matter of sentencing *sub curia* and had the appellant examined by a psychiatrist for the Supreme Bench, Dr. Kniffin, on August 16, 1967. In her report to the court, she stated that the defendant was coherent and rational and there was no evidence of any psychosis disorder. In her summary, she stated that there was no evidence of psychosis or organic impairment. Judge Harris pointed out that appellant was a young man of good intelligence, actually above average at times, with a long record of serious crimes of anti-social action which raised questions as to his judgment. In arriving at his conclusion, he pointed out that he had the advantage of appellant's appearance in court before him and also Dr. Kniffin's recommendation, and that the only evidence to the contrary was that of Dr. Mackay that he was probably incompetent to file a plea on June 12, 1967. However, he did not impose sentence on September 16, 1968, since a hearing had been set before Judge O'Donnell on October 24, 1968 on the motion for a new trial.

At the hearing on October 24, 1968, Dr. Mackay was again called to testify as to appellant's competency to stand trial. At that time he repeated in substance his prior testimony. He further testified that in reaching his conclusion he considered Dr. Kniffin's report, although he could not remember the contents thereof. Dr. Mackay stated that appellant probably had had the seeds of the psychosis all his life and thus was suffering from the

psychosis at the time of his trial in November 1967. He further stated that "it is extremely unlikely that he was mentally or psychiatrically competent" at the time of trial but that competency was remotely possible. Judge O'Donnell concluded that on November 9 and 10, 1967 appellant was competent to stand trial. In his conclusion Judge O'Donnell emphasized that the only testimony to the contrary was that of Dr. Mackay who could only state it was extremely unlikely that appellant was competent. Judge O'Donnell relied upon Dr. Kniffin's report and appellant's conduct at trial, specifically his active participation in cross-examination.

Dr. Mackay's testimony, coming as it does from an association with appellant after his commitment to Perkins, is merely conjecture as to appellant's prior state of health. The two courts had before them a report by a competent psychiatrist who had interviewed the appellant between the two trials and found him to be competent. In addition, the two judges had their own personal observations of the appellant as he appeared at trial. Where the question is one of competency to stand trial rather than competency to commit the crime, we think it is permissible, that the trial court's conclusion be based in part upon its own observation. Having considered the testimony at the two hearings which appears in the record and the conclusions of the trial judges, we find that there was evidence before the courts from which each could find, beyond a reasonable doubt, that appellant was competent to stand trial on June 12 and November 9 and 10, 1967.

II

The test to be applied in judging the sufficiency of the evidence in a jury trial is that the admissible evidence adduced must show directly or support a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Williams v. State*, 5 Md. App. 450, 247 A. 2d 731. Appellant does not challenge the State's proof of the *corpus delicti* and thus

his challenge is only as to the proof of his criminal agency. Testimony adduced at trial revealed that on August 19, 1967, while at a car wash on Sinclair Lane in Baltimore City, one Ronald Garrison saw two men break into the Citgo station at 3320 Sinclair Lane and place a large object in the trunk of a burgundy colored 1963 Ford. He notified the police and then followed the car to another gas station at Macon Street and Erdman Avenue. The police arrived and Garrison saw the two men run from the car across Erdman Avenue and into the Armistead Garden Apartments complex. Officer Benjamin Raihl testified that he responded to a call concerning a breaking and entering at the Citgo station. He met Mr. Garrison at Macon Street and Erdman Avenue and saw the two men run from a 1963 Ford parked behind the station. One of the men who fled wore a light shirt and a black dickey. During the pursuit of the two men, he saw a man dive under the steps of 5003 Wright Avenue. The man was the appellant, who was wearing a light shirt and black dickey, and he was placed under arrest. After the arrest, Officer Raihl returned with appellant to the rear of the station where the burgundy colored 1963 Ford was parked. The trunk of the car was open and a large cigarette machine was about a foot and a half from the rear of the car. Two hundred and seventeen packs of cigarettes were found in the trunk of the car. The testimony of Officer Raihl, when considered with that of Mr. Garrison, supported a rational inference from which the jury could be convinced of appellant's guilt of the crime charged.

## III

Although phrased as a denial of a motion for continuance, appellant actually complains of the court's failure to reopen the case to permit testimony from a new defense witness. The criteria to be applied to the judge's action, however, is the same as when error in failure to grant a continuance for an absent witness is alleged.

We have held that the granting or denial of a continuance is within the sound discretion of the trial court.

*Nichols v. State,* 6 Md. App. 644, 252 A. 2d 499. To show an abuse of discretion for failure to continue a case because of the absence of a witness, the party requesting the continuance should show the evidence of the absent witness was competent and material, that he believed the case could not be fairly tried without the evidence, that he made diligent and proper efforts to secure the evidence, and that he had some reasonable expectation of securing the evidence within some reasonable time. *Clark v. State,* 6 Md. App. 91, 250 A. 2d 317.

The complaint herein was not raised until the hearing held on October 24, 1968. The subject was raised only as part of a motion for a new trial and not as a formal motion to reopen the case. Thus the question is not properly before us. Maryland Rule 1085. In addition, it is clear that appellant has failed to meet any of the criteria to show an abuse of discretion. Specifically, there was no proffer whatsoever of the expected content of the desired witness's testimony. We find no merit in this contention.

*Judgments affirmed.*