# JOHN WILLIAM BETHEA v. STATE OF MARYLAND

[No. 691, September Term, 1974.]

*Decided May 29, 1975.*

The cause was argued before MOYLAN, MENCHINE and DAVIDSON, JJ.

*Edward J. Angeletti* and *George E. Burns, Assistant Public Defenders,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Joseph Lyons, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

On May 9, 1974 John William Bethea came to trial in the Criminal Court of Baltimore charged with armed robbery and related offenses allegedly committed on August 18, 1973. He previously had been acquitted of entirely unrelated offenses allegedly committed on the same date.

At the earlier, unrelated trial of the appellant for those other offenses, certain records of the American Ice Company had been admitted in evidence and two of its employees, a Mr. Williams and a Mr. Phillips, had testified. It is plain from the record that those records and the testimony of the witnesses had tended to support an alibi defense of the appellant on the same date as the subject charges and may have influenced acquittal. Edward J. Angeletti, assistant public defender, who had represented appellant at the earlier trial, was his counsel also in the subject trial.

On the morning of the scheduled date for trial, defense counsel sought postponement from the administrative judge upon the ground that the records of the American Ice Company were not available for the subject trial because "the man who had the keys to the room where the records were stored was in New Jersey." The State opposed the requested postponement and it was denied. It developed subsequently, (but prior to commencement of trial) that although a Mr. Williams of the American Ice Company was able to make the records available, a Mr. Phillips of that company was confined in the Baltimore County General Hospital for operative procedures being performed on the morning of trial. It then was represented to the administrative judge that: "Mr. Phillips is in fact the most vital witness for the defendant in terms of the time and the meaning of the records that I previously referred to and without him the defendant will not get a fair trial under any circumstance." The second requested postponement, again opposed by the State, again was denied. The trial went forward and resulted in conviction of the appellant for armed robbery and a handgun offense.[1]

---

1. At the substantive trial the evidence of guilt was circumstantial in

On appeal it is contended, *inter alia,* that refusal of the requested postponement was an abuse of judicial discretion by the administrative judge. Believing that it was and because remand for a new trial is thus necessary, we do not reach other contentions respecting alleged errors in the substantive trial.

This Court early made plain that a requested postponement of a criminal case upon the ground of the absence of an allegedly necessary witness should be granted only if:

1. It was made to appear that there was a reasonable expectation of securing the evidence of the witness within a reasonable time;

2. The proffered evidence was competent and material;

3. The case could not be fairly tried without the proffered evidence, and

4. The party seeking postponement had exercised reasonable diligence to secure the evidence prior to the date assigned for trial.

*Hainesworth v. State,* 9 Md. App. 31, 36, 262 A. 2d 328, 330; *Nichols v. State,* 6 Md. App. 644, 646, 252 A. 2d 499, 500; *Clark v. State,* 6 Md. App. 91, 100, 250 A. 2d 317, 322.

We pointed out in *Guarnera v. State,* 20 Md. App. 562, 573, 318 A. 2d 243, 248, that legislative enactment of Article 27, § 591 (a) [2] vested exclusive power to postpone the trial date of a

character. No witness, including the victim, was able to identify the appellant as the perpetrator of the offenses. There had been a misidentification by the victim at a lineup conducted two days after the incident.

2. Article 27, § 591 (a) (Cum. Supp. 1974) reads as follows:

"Within two weeks after the arraignment of a person accused of a criminal offense, or within two weeks after the filing of an appearance of counsel or the appointment of counsel for an accused in any criminal matter, whichever shall occur first, a judge or other designated official of the Circuit Court or the Criminal Court of Baltimore City in which the matter is pending, shall set a date for the trial of the case, which date shall not be later than six months from the date of the arraignment of the person accused or the appearance or the appointment of counsel for the accused

criminal case in the administrative judge of the court, and that "even the power of the administrative judge to postpone is not entirely discretionary, but may be exercised only 'for extraordinary cause shown by the moving party' ". *Guarnera, supra,* also had declared (P. 574 [249]): " * * * that it makes not the slightest difference whether a continuance requested is the fifth, the third, or the very first — the reasons for it must satisfy the administrative judge that they meet the test of extraordinary cause." Maryland Rule 740 is couched in language identical with that of the statute. Thus the Legislature and the Court of Appeals of Maryland severally have mandated that "extraordinary cause" must be shown by the party moving for a postponement. Moreover, we are acutely aware of the necessity for expeditious trials of criminal cases generally and in Baltimore City in particular and mindful that both statute and rule mandate a most careful scrutiny of the facts and circumstances giving rise to a requested postponement.

Although the statute and the rule became effective subsequent to our decisions in *Hainesworth, Nichols* and *Clark,* all *supra,* we believe that the criteria heretofore recited, as synthesized from those decisions, remain viable as guides to the determination whether "extraordinary cause" has been shown. Of necessity this judgment must be made on a case to case basis. We shall examine the record in the light of the mandates imposed upon us by statute and rule, utilizing the recited criteria.

### Reasonable Expectations of Later Availability of Witness

That the absent witness had undergone operative procedures on the morning of trial is a conceded fact. The moving party made the following proffer:

"* * * The indications from the receptionist at the

---

whichever occurs first. The date established for the trial of the matter shall not be postponed except for extraordinary cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending."

hospital was that Mr. Phillips would probably be released on Saturday or at the latest Monday.

"His wife was under the impression he would be there four days. The receptionist said possibly only until Saturday. It's obvious that he's not going to be able to appear here for this trial. * * * Having undergone that procedure myself I'm aware of the recuperative periods that are required before full mobility and action can be resumed. The reason for it is that the nose becomes a mass of bleeding tissue and is completely packed after rhinoplasty and takes several weeks before the danger of hemorrhaging in that area passes."

There was no evidence to the contrary.

### Competence and Materiality of the Evidence

The witness Phillips had in fact testified in the earlier, unrelated trial. The defense of alibi on the same date had been asserted therein. That trial resulted in acquittal. The proffered evidence clearly was competent and material. The trier of fact necessarily would be required to evaluate the testimony of Phillips in reaching a decision upon the criminal agency of the accused for the subject offenses. In short, his testimony might influence their decision upon the basic question of guilt or innocence.

### The Evidence as Necessary to a Fair Trial

The moving party proffered that:

"* * * I stand here and on the record I object to going to trial without having Mr. Phillips available to testify. That Mr. Phillips is in fact the most vital witness for the defendant in terms of the time and the meaning of the records that I previously referred to and without him the defendant will not get a fair trial under any circumstances."

After acknowledging that the State's case was "weak" the prosecutor said:

> "The State opposed this post-ponement as it would oppose all other post-ponements where it was ready to proceed and where it did not believe that there would be reversible error.

> "Mr. Phillips the witness who is needed by the defense or who is requested by the defense testified in the first trial. That trial proceeded in the same manner with Mr. Williams from the Ice Company testifying with all records available to him. Mr. Williams was cross examined fully. Mr. Phillips then testified obviously on direct examination and again was cross examined fully.

> "Mr. Phillips' testimony at that time was very limited. It consisted primarily from my notes of the following: That he was employed by the American Ice Company. He was a platform cashier. The company was located at 2100 W. Franklin Street. On August the 18th, 1973 the Ice Company opened at approximately 6:15 and that he started to work at 7:00. He then discussed the number code for the various tickets that were sold. He then talked about a man named Mr. Starkey (phonetically) who was a dealer and lots of times would come in at a specific hour. He could not recall Mr. Starkey coming in that time, could not recall Mr. Bethea coming in on the particular day, but could state that he had bought ice in the past on quite a few occasions. He could not recall the time Mr. Starkey came in but indicated Mr. Starkey would be able to recall the time he came in.

> "That was the extent of his testimony. He was very minimally cross examined because he did not contribute much either to the State's case or the defense's case. It is the State's position at this time because of his prior testimony, it was not essential at that time to the defense and because the State is

willing to stipulate to what the testimony was and is willing to have the entire transcript of Mr. Phillips' testimony brought in that the case should not be delayed for that reason."

Responding to the State's offer, counsel for appellant said:

"* * * Mr. Phillips did not testify immediately after Mr. Williams did in the last trial in point of time. That's important because Mr. Williams had all of the records from the ice company. Mr. Phillips did not have those records available to him when he testified. Mr. Phillips said if he had those records available he would be able to tell us very closely the approximate times that the slips were signed and that the ice was purchased by the person that those slips would indicate purchase the ice at the time they purchased them. That evidence was not available at the last trial because Mr. Williams had those slips and took them back with him to the ice house or the ice company.

"Mr. Phillips would need those slips available to testify as to their meaning and time. He's not available not now. That's the reason I cannot accept the stipulation of his prior testimony because his testimony in this case would be much more detailed. It would be specified as to the time of purchase which is vitally important in terms of when this incident occurred and whether or not the defendant was the perpetrator of this incident."

Conceding that he had opposed both requests for postponement, the prosecutor suggested that he would be willing to return to the administrative judge, declaring for the record that:

"Finally as far as the post-ponement requests were concerned, although the State did reject or say that it wished to proceed to trial in Judge Foster's chambers, when I came to the Courtroom Part IV I again discussed the case with Mr. Angeletti and

said that administratively that criminal justice was important and if this would cause any feelings between us that we were not or Mr. Angeletti was not being treated fairly by the State in this case as opposed to a general opposition to any post-ponements that the State would join in his request for post-ponement. The State went as far as to say they would seek a post-ponement and go to see Judge Foster and say under all the circumstances for all the liabilities and detriments the State will join with Mr. Angeletti in a request for post-ponement. Mr. Angeletti at that time said no he did not wish that to be done and that he was ready to proceed to trial."

Counsel for appellant thus responded:

"I made my position clear to Mr. Lyons [the prosecutor] that I had no objection to trying this case or going ahead with it if I had my witnesses available. I still say that to the Court if my witnesses are available I will try the case. As the Court is aware I don't think I have post-poned more than five cases in the last year and a half. I probably have one of the heaviest case loads in Baltimore City. So the point I'm making is that I'm prepared to try 99% of my cases, and if unfortunately in this case Mr. Phillips went to the hospital I had no control over this, and I didn't tell him to go to the hospital. I didn't tell him to be absent himself from here today so that we could post-pone it.

"If Mr. Lyons wants to go by himself to the Chief Judge and say that under all the circumstances he will now agree to the post-ponement that's his prerogative. We have been before the Chief Judge twice now. On each occasion he [the prosecutor] has opposed the request for post-ponement in a strong in as strong a way that he could. He even signed a statement on the back of the request form saying

that he will accept the risks inherent in going to trial under the circumstances.

"If he wants to change that that's his prerogative. I do not have any standing to tell him what he should or shouldn't do. I only point out to the Court my own position that I cannot assure the defendant's rights are protected without this witness being available, and if he wants to go to the Chief Judge again for the third time, he goes by himself. I will not go to the Chief Judge again."

*Diligence to Secure Evidence Prior to Trial*

Counsel for appellant proffered that: he "had spoken to Mr. Phillips back in March and indicated to him that we would need him as a witness in this trial, and he indicated that he would be available. A phone call was made to Mr. Phillips' home, and Mr. Phillips' wife indicated to Mr. Segal my associate that Mr. Phillips was in the Baltimore County General Hospital being operated on today and that he would not be available obviously for trial." Defense counsel conceded that he "assumed, perhaps wrongfully, * * * that Mr. Phillips had been served [3] and was available for trial."

*Additional Circumstances*

Acting upon the evidence as herein summarized, the administrative judge denied the requested postponement. He did so, however, only after the prosecutor had undertaken to "assume the risks attendant to going to trial without the witness being available." Defense counsel described such course as having taken place in the following manner:

"On that basis [the evidence as previously summarized herein] I again went to Judge Foster and asked for a post-ponement, and Mr. Lyons then called the hospital to verify what I have just related to the Court, he was able to verify that information. Judge Foster then said to Mr. Lyons, will you

---

**3.** The record shows that summons for Phillips had been issued but was returned "non-est."

assume the risks attendant to going to trial without the witness being available, and under these circumstances Mr. Lyons then and Judge Foster entered into a discussion as to the exact wording of what I have just said."

The substantial accuracy of defense counsel's statement was acknowledged by the prosecutor, who said:

"It was verified that he (Phillips) was in the hospital undergoing surgery and would be probably released on Saturday. We then returned to Judge Foster and *Judge Foster saw a statement from the State that it was willing to accept the risk of going to trial.* (Italics supplied.)

### The Decision

Under the recited criteria synthesized from *Hainesworth, Nichols* and *Clark,* all *supra,* we are persuaded that the facts and circumstances existing at the time of the requested postponement were such that the moving party had demonstrated "extraordinary cause" for postponement within the meaning of those words in the statute and rule.

As to the offer by the State to permit the use of the prior testimony of the missing witness, we find defense counsel's stated reasons for objection to such use of transcribed testimony to be entirely reasonable even if we assume, which we do not, that the circumstances shown by this record generally may have permitted the use thereof.[4]

We do not find defense counsel's refusal to return a third time to the administrative judge, when measured against the prosecutor's manifest disinclination to return alone, to operate as a bar to assertion of the issue in this Court.

The additional circumstance relating to the State's "assumption of risk" attendant upon going to trial without

---

4. See: Yellow Cab Co. v. Henderson, 183 Md. 546, 556, 39 A. 2d 546, 551-52; Contee v. State, 229 Md. 486, 491, 184 A. 2d 823, 825-26; Gaskins v. State, 10 Md. App. 666, 677, *et seq.,* 272 A. 2d 413, 419-20; Annarina v. Boland, 136 Md. 365, 383, 111 A. 84, 90. We specifically do not reach the issue of admissibility generally.

the witness buttresses our view. This circumstance seems to us to have created a condition whereby the opposing party, rather than the administrative judge, exercised discretion under the statute and rule. We do not wish to be understood as indicating in any way that the side opposing postponement may not fully advocate the strength of its position. We believe, however, that such advocacy should take the form of reasoned argument after presentation of facts and circumstances tending to show that the requested postponement should be denied. In the subject case the record distinctly indicates that the prosecutor was permitted, wrongfully we believe, to exercise the required discretion.[5]

> *Judgment reversed.*
> *Remanded for a new trial.*
> *Costs to be paid by Mayor and*
> *City Council of Baltimore.*

---

5. While it was the prosecutor who was permitted to "assume the risk of reversal," it was the accused alone who would be harmed by a failure of the administrative judge objectively to assess the factual base for a requested postponement.