IN RE APPEAL NO. 1124 (1974) FROM THE
CIRCUIT COURT OF BALTIMORE CITY,
SITTING AS A JUVENILE COURT

[No. 1124, September Term, 1974.]

*Decided July 7, 1975.*

The cause was argued before MOYLAN and LOWE, JJ., and
JOHN C. ELDRIDGE, Associate Judge of the Court of Appeals,
specially assigned.

*Arnold M. Zerwitz, Assistant Public Defender,* and *George
E. Burns, Assistant Public Defender,* with whom were *Alan
H. Murrell, Public Defender,* and *Richard G. Bartholomee,
Assistant Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,*
with whom were *Francis B. Burch, Attorney General,
Milton B. Allen, State's Attorney for Baltimore City,* and

*Jack Terzin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The juvenile appellant in this case was found to be delinquent in the Circuit Court of Baltimore City sitting as a Juvenile Court by reason of the illegal possession of a handgun. Upon this appeal, he raises four contentions:

(1) That he was erroneously denied a continuance for purposes of producing a necessary defense witness;

(2) That the court erred in applying the "missing witness" rule;

(3) That there was not shown an adequate legal basis for the finding of delinquency; and

(4) That the evidence did not show that the gun in question was a "handgun" within the contemplation of Article 27, § 36B.

The factual posture of the case is very simple. The only witness called by the State was Officer Timothy Murry of the Baltimore City Police Department. Officer Murry testified that on October 2, 1974, at approximately 11:50 a.m., he was seated in his marked police car parked in the 400 block of E. 25th Street. An unidentified informant approached him and told him that there were three black male juveniles with a gun in a house on the corner. When three boys came out of the house, Officer Murry stopped them and frisked them. The frisk produced a .32 caliber automatic and a clip. Both the gun and the clip were empty. The gun was not operable. All three juveniles were arrested, and the informant was paid a $100 bounty. The critical testimony implicating the appellant was the testimony of Officer Murry that it was the frisk of the middle man of the threesome that produced the automatic and that the appellant was that middle man.

The appellant took the stand in his own defense. He testified that he was awakened on October 2, 1974, by his cousin, Joseph Thompson, and a third boy, Raymond Hansley. It was the cousin, Joseph Thompson, who possessed

the .32 automatic. He showed the appellant the gun but never let it out of his own hands. The cousin said that he wanted to turn the gun into the police department for the bounty that was at that time being offered for handguns. He asked the other two juveniles, Hansley and the appellant, to accompany him to the police station, and he offered to split the bounty three ways. When the three boys emerged from the house, they were stopped and frisked by Officer Murry. According to the appellant, however, it was the cousin, Joseph Thompson, who was the middle boy and who possessed the gun at the time of its seizure.

The identification of the appellant as "the middle boy" was, therefore, the pivotal issue of the entire case. At the initial hearing on October 28, 1974, the appellant took the initiative in this regard and called to the stand the third juvenile, Raymond Hansley. Hansley was present and was sworn in as a witness. Just as the direct examination was beginning, the trial judge sua sponte questioned the juvenile witness on the subject of possible self-incrimination. After an exchange that consumed some five pages in the trial transcript, the court concluded that it did not want the witness to go forward with his testimony until he had been allowed an opportunity to consult with a lawyer:

> "THE COURT: I am not so sure that this witness, considering his age, is fully aware of the advice that I have been trying to give him, and the implications that there may be in his testifying, and consequently, it is my own personal opinion — my own personal view that he ought not be called as a witness at this time, until he has had an opportunity to receive advice either from his family members, or from a lawyer, or both.
>
> MR. BARTHOLOMEE: Well, under those conditions, then, your Honor — would your Honor be in a position to continue the case, is that what you are suggesting?
>
> THE COURT: If you wish to have a continuance, I would grant you a continuation.

MR. BARTHOLOMEE: Well, I certainly wish the testimony of this witness.

THE COURT: Well, you are certainly entitled to try to have him as a witness, yes, and certainly entitled to a continuance in order to achieve this purpose."

A continuance was granted until November 8, 1974. Although we certainly applaud the solicitude of the trial judge for the juvenile witness, we note that the continuance on that occasion was not caused in any way by the appellant, who had his defense witness in court ready to testify.

When the case was called on November 8, neither the appellant nor his witness were present. It was revealed, however, that the entire problem with respect to November 8 was because of a bureaucratic mix-up in the Public Defender's Office. Several members of the Public Defender's staff, with administrative responsibilities, took full responsibility for the mix-up. It was clear that the appellant was not derelict in any fashion.

The critical occasion for present purposes was the reconvening of the trial on November 21, 1974. On that occasion (and for the first time), the defense witness, Raymond Hansley, was inexplicably missing. In terms of diligence, however, it was developed that the appellant had issued a summons for him. In terms of reasonable expectation that he would appear to testify, it was developed that the appellant had spoken to him as late as the day before and had been reassured that he was willing and ready to testify. Appellant's counsel represented to the court:

"The young man in question is not here, and I am most respectfully requesting a further continuance. I believe, as I stated on October 28th, that his testimony is indeed crucial to the defense of this respondent, and I need his testimony. I know what it's going to be. I know the nature of it, and I believe that it will completely exonerate my client. Therefore, I am asking for a further continuance in this case. If this Court feels it is necessary, although I'm not certainly recommending it, or

requesting it, but if that's the only way that it can be obtained, I would suggest issuing a warrant so that he can be brought in. I don't have any explanation as to his absence today. All I can present to the Court is from my client's contact with him, his willingness as late as yesterday to come in to testify. All I can assume from that is something must have happened, either in the family, or something to prevent his being here today, because he certainly had made every plan to be here.

THE COURT: Was a summons issued for him to be here?

MR. BARTHOLOMEE: It's my understanding a summons was issued, yes, Your Honor."

The court denied the motion for continuance, stating:

"I'm going to deny counsel's request for postponement. As I recounted before, this is the third time this matter has been in for hearing. And each time, we have attempted to move ahead with the defense. The last time the State was able to proceed. Today the defense is unable to proceed, without any explanation where the witness is. Why he's not here, although the respondent did have communication with him yesterday. I just do not feel we can put this matter off until a fourth time, and who knows what may happen then. I think three trial dates for the Court prepared to hear the defense is adequate for the respondent. I think there has to be a point at which these proceedings reach a conclusion. I think that under the circumstances, we have reached that point here today."

The standard by which we review the exercise of discretion by the trial court in these matters is clear. As we said in *Hainesworth v. State*, 9 Md. App. 31, at 36:

"We have consistently held, however, that in order to show an abuse of that discretion it is

incumbent upon an accused who seeks such continuance to show that the testimony of the absent witness was competent and material; that the case could not be properly tried without such evidence; that he had made diligent and appropriate efforts to procure the witness; and that he had reasonable expectation of procuring the attendance of the witness in court within some reasonable time. *Nichols v. State,* 6 Md. App. 644; *Clark v. State,* 6 Md. App. 91. The circumstances of each particular case must be looked at to ascertain whether the lower court's action amounted to an abuse of discretion. *Walter v. State,* 4 Md. App. 373."

See also *Thanos v. Mitchell,* 220 Md. 389; *Plank v. Summers,* 205 Md. 598; *Clark and Richardson v. State,* 6 Md. App. 91; *Boone v. State,* 2 Md. App. 80.

In the present case, no jury was, of course, involved. Other witnesses were not being inconvenienced. The first continuance was necessitated by the wholly appropriate actions of the judge himself. The second continuance was attributed solely to the bureaucratic machinery of the Public Defender's Office. The request by the appellant here invoked no phantom witness, but a named witness who had been present and willing to testify on October 28. He was a direct eyewitness to the critical event and it was represented to the court by appellant's counsel that his testimony would corroborate and, therefore, tend to exonerate the appellant. A summons had been issued for him and the appellant had talked to him as recently as the day before trial. Under the circumstances, we hold that the denial of the request for a continuance in this case was an abuse of discretion and that a reversal of the adjudication of delinquency is called for.

In view of our disposition of the case in this regard, it is unnecessary to deal with the second and third contentions raised by the appellant.

For the guidance of all parties upon a possible retrial, we do note one comment with respect to the appellant's fourth contention. It was testified to by Officer Murry that the gun

in this case was "inoperable." The State has argued that not much was required to make it operable. No expert witness was called by either side. We do not know what, if any, parts were missing. We do not know how much or little would be required by way of repairs or substitute parts to have made the gun operable. With the issue a very real one in this case as to whether the gun was a "handgun" within the contemplation of Article 27, § 36B, we would hope that a retrial, if there be one, would more fully develop all of the surrounding facts bearing upon this issue.

*Judgment reversed; case remanded for a new trial.*