## ROYAL *v.* STATE

[No. 33, September Term, 1964.]

*Decided November 11, 1964.*

The cause was submitted to HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

Submitted on brief by *Stanley J. Schapiro* for the appellant.

Submitted on brief by *Thomas B. Finan, Attorney General, David T. Mason, Assistant Attorney General, William J. O'-Donnell, State's Attorney for Baltimore City,* and *Andrew J. Graham, Assistant State's Attorney,* for the appellee.

HORNEY, J., delivered the opinion of the Court.

The principal question presented by appellate counsel for the defendant (Doyle D. Royal) on this appeal from convictions of armed robbery and for carrying a deadly weapon relates to the propriety of the trial court allowing codefendants to invoke the privilege against self-incrimination. Additional questions concern the sufficiency of the evidence to sustain the verdicts of guilty, the failure of the court to caution the jury that it should not draw an unfavorable presumption or inference against the defendant because the codefendants refused to testify, and the refusal of the court to quash the indictments.

In the early evening of a day in August 1962, a supermarket on Belair Road was held up and robbed by two men. One of

them pointed a pistol at the manager and demanded money. He gave them all he had and the robbers put it in a cardboard box and fled. A short time later, the police, converging on the scene of the crime in response to a radio message as to the robbery, apprehended the defendant and his codefendants (Richard Elliott and James Robert Gale) in an automobile fitting the description and license number of one observed leaving the supermarket after the hold up. A cardboard box (containing $2300 in cash) was found in the automobile and a pistol was removed from the belt of the defendant. At the trial, the store manager identified the defendant as the one who held the gun. Three of the store clerks and a customer also identified him.

The defendant testified that he was not a party to the robbery, that he had not participated in it in any way, and that he had no knowledge of the crime. While he admitted being with the codefendants all day in a downtown bar until late afternoon, he claimed that he was let out of the automobile in Hamilton, he to get something to eat, they to go borrow some money; that the codefendants picked him up about twenty-five minutes later on the way to a baseball game at the stadium as previously arranged; and that while proceeding to their destination they were apprehended by the police. The defendant further claimed that although the police had searched him three times and found nothing, one of them came up to him a fourth time with the pistol, "pulled it out from the front" of the defendant, and stated that he had found the weapon on the defendant.

The day before he was scheduled to be tried, the defendant escaped from jail. He was subsequently apprehended by the federal authorities in Nevada and taken to New Jersey to await trial on a federal charge of bank robbery. After he had been sentenced to the federal penitentiary at Atlanta, he demanded a speedy trial and, subsequently filed a motion to quash all indictments then pending against him in Baltimore City on the ground that the State of Maryland had relinquished and waived its claim to jurisdiction over him by failing to make demand for him and permitting him to be prosecuted in a district court in New Jersey.

(i)

Under the circumstances of this case we find no impropriety in the trial court not requiring the witnesses called by the defendant to testify in his behalf. The claim of error is based on the contention that the witnesses, though they were codefendants, were compellable witnesses since they had been previously tried and convicted and because there was nothing to show that they were subject to further prosecution or punishment. The record does not support the contention: instead it appears that each witness invoked the privilege because other criminal proceedings were pending against them and that, if they testified, their testimony might incriminate them.

As each witness was sworn, the trial court undertook to advise him that he had a right to refuse to take the stand and inquired as to his desire. Even though a witness cannot be compelled to give self-incriminating testimony, Article 22 of the Declaration of Rights, he should be called to the witness stand and sworn. *Midgett v. State,* 223 Md. 282, 289, 164 A. 2d 526 (1960). See also *Adams v. State,* 200 Md. 133, 88 A. 2d 556 (1952). This is so because the privilege is not a prohibition of inquiry, but is an option of refusal. See 8 Wigmore, *Evidence* (McNaughton rev.), § 2268. And while it is proper in some instances for the court to advise a witness of his privilege against self-incrimination (see, for example, *Midgett v. State, supra,* at p. 291), it is ordinarily not necessary for the court to inform an accomplice called as a witness, as was the case here, of his constitutional right to claim immunity from testifying. See *Forrester v. State,* 224 Md. 337, 167 A. 2d 878 (1961). See also *Butz v. State,* 221 Md. 68, 156 A. 2d 423 (1959). This is so because the privilege against self-incrimination is a personal one and only the witness may assert it. The proper course of procedure is for the witness to wait until a question has been propounded which tends to incriminate him and then decline to answer it. *Midgett v. State, supra* (at p. 289). Likewise, if further interrogation is pressed as is often the case, the witness should answer the questions, one by one when propounded, or claim his privilege to decline answering; otherwise, since it cannot be known beforehand which he will

do, the court would be unable to rule whether an answer to the particular question might incriminate the witness. This, of course, is a matter for the trial judge to determine as and when each claim of privilege is invoked. *Midgett v. State, supra* (at p. 289).

It appears that in the case at bar each witness, after stating his desire to refuse to take the stand or to testify, in response to the court's inquiry, was nevertheless sworn and subjected to examination by counsel for the defendant and answered all questions propounded to him. When the codefendant Elliott was asked why he refused to take the stand, he stated that he had other legal matters pending in court, some of which were an outgrowth of this case and others that were not yet in court. When the codefendant Gale was asked why he refused to testify, he replied that there were "things" that could incriminate him. In both instances, trial counsel asked no further questions, apparently, as the record indicates, because he realized that further questioning would have been futile.

Although the record is silent as to what proceedings were then pending, or likely to be thereafter filed, against the codefendants and as to how their testimony in this case could incriminate them, it may well be, since no objection was made to the invocation of the privilege, that counsel for the defendant as well as the trial court, were aware of the situation. In circumstances where the court is satisfied that the claim has a substantial basis, the mere refusal to testify under a claim of privilege may justify the upholding of the privilege. See *Midgett v. State, supra* (at p. 291). In any event, since no proffer was made with respect to what testimony the defendant expected to elicit from the codefendants, no prejudice has been shown by their refusal to testify.

### (ii)

Apart from the rule that this Court will not review the sufficiency of the evidence on appeal in the absence of a motion for a judgment of acquittal below, *Tull v. State,* 230 Md. 152, 186 A. 2d 205 (1962), we have consistently held that in order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence it is necessary to show that there

was no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Coates v. State,* 232 Md. 72, 191 A. 2d 579 (1963). This was clearly not the case here as the recital of facts shows.

### (iii)

The suggestion of the defendant that the failure of the trial court to caution the jury that it should not draw an unfavorable presumption or inference against the defendant because the codefendants refused to testify was a "plain error" which this Court should correct pursuant to Maryland Rule 756 g, is clearly without merit as a reading of the sufficiently adequate advisory instruction shows. See *Jones v. State,* 229 Md. 472, 184 A. 2d 809 (1962). Not only was no request made for such an instruction, but we find nothing in the record which would have required one on this point had an objection to its omission been made. Cf. *Canter v. State,* 220 Md. 615, 155 A. 2d 498 (1959).

### (iv)

Nor is there any merit to the contention that the indictments should have been quashed on the ground that the State of Maryland relinquished and waived jurisdiction over the defendant. There is nothing in the record to indicate that the State failed to press for his return from Nevada after he had been apprehended there by federal authorities. Nor was there a showing that the State was dilatory in requesting that he be brought here first. In any case, in a situation such as this a prisoner may not question priority of jurisdiction as between State and Federal courts. See *Ponzi v. Fessenden,* 258 U. S. 254 (1922). See also *Williams v. Taylor,* 327 F. 2d 322 (C. A. 10th 1964), *cert. den.* 377 U. S. 1002 (1964).

### (v)

The defendant, because his appellate counsel properly refused to submit other asserted grounds for appeal pertaining to incidents outside of or not supported by the record, undertook to file what he called a "brief pro se," in which, besides raising the same question appellate counsel had already presented with respect to invoking the privilege against self-in-

crimination, also raised questions concerning the claimed ineffectiveness of trial counsel and the impropriety of allowing the same petit jury to judge his guilt on separate indictments.

Since there is a possibility that these last two questions might be raised in a post conviction proceeding and there are sufficient facts in the record and briefs to enable us to determine whether or not there is any merit to the contentions, we deem it expedient to dispose of them now. See *Graczyk v. State,* 230 Md. 299, 186 A. 2d 616 (1962). As to the contention that the defendant had ineffective assistance of counsel because he was not adequately prepared for trial, the record shows that counsel went to the city jail as soon as he was notified that the defendant had arrived in Baltimore from Atlanta for purposes of getting the names of defendant's witnesses and of refreshing his memory (after a lapse of fifteen months) as to the facts and that he accomplished both purposes. There was therefore no reason to request a postponement. See *Lewis v. State,* 228 Md. 600, 180 A. 2d 839 (1962) ; *Harmon v. State,* 227 Md. 602, 177 A. 2d 902 (1962). With respect to the contention that the court erred in allowing the same petit jury to judge his guilt on the robbery charge as well as the deadly weapon charge, we need only point out that Rule 734 specifically provides that two or more indictments may be tried together if the offenses charged could have been joined in a single indictment, as was the case here. See *Lewis v. State,* 235 Md. 588, 202 A. 2d 370 (1964).

*Judgments affirmed.*