## SHIFFLETT *v.* STATE

[No. 488, September Term, 1966.]

 

 

*Decided January 10, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Carmine J. Granese, Jr.* for appellant.

*Julius A. Romano, Assistant Attorney General,* with whom were *Robert C. Murphy, Attorney General, Morton A. Sacks, Assistant Attorney General, Charles E. Moylan, Jr.* and *John Henry Lewin, Jr., State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* and *J. Thomas Nissel, State's Attorney for Howard County,* on the brief for appellee.

HORNEY, J., delivered the opinion of the Court.

In this case, involving the refusal of a witness called by the State to testify at the trial of an indictee charged with having solicited him to commit mayhem and murder, the question on

appeal is whether or not Edward Everett Shifflett was in contempt of court when he refused to testify against the indictee.

According to the indictments, the person alleged to have been solicited is the appellant, the person alleged to have done the soliciting is John Bernard Kellar and the person named as the intended victim was Carvel Kenneth Hatfield. The cases were removed from the Criminal Court of Baltimore to the Circuit Court for Howard County, where they came on for trial before Mayfield, J., sitting without a jury.

To prove its case in chief, the State called the appellant as a witness. He took the stand and was sworn. But before he was asked any questions by the prosecuting attorney with regard to the alleged solicitations to commit the crimes, counsel for the witness intervened and informed the court that his client did not want to testify. As a result of the colloquy that ensued between counsel for the witness and the court, the witness was permitted, without objection on the part of the State, to prematurely invoke the constitutional privilege against self-incrimination. Thereafter, the prosecuting attorney, instead of insisting on his right to propound the questions he wanted the witness to answer and have the court rule as to whether answers thereto might be incriminatory, proceeded to offer the witness immunity from prosecution with respect to all matters as to which he might testify in the two cases about to be tried. The court at that time, however, ruled that the appellant was not a compellable witness on the ground that the immunity offered by the State was not coextensive with the privilege against self-incrimination. But when the prosecuting attorney advised the court that he had been informed that the appellant had on two previous occasions testified before the Grand Jury for Baltimore City as to matters material to the cases then being tried without claiming the privilege, the court countermanded its former order by ruling that the appellant, having waived his privilege, was a compellable witness and ordered him to testify in the pending cases.

On being recalled to the stand, the witness was informed that he was a compellable witness and was advised both by his counsel and the court that if he persisted in refusing to testify he could be fined or imprisoned for contempt. But despite the re-

newal of the offer of immunity by the State, the witness still refused to testify, whereupon the court found him to be in contempt and directed the sheriff to take him into custody until he purged himself thereof. Later the same day, counsel for the witness advised the court that his client had told him that if he were held in contempt and jailed the court should be informed that under no circumstances would he testify against the indictee. Subsequently, the trial of the solicitation cases was postponed and the witness was released on bail pending the outcome of this appeal.

The appellant on the one hand, claiming that he had answered the only questions propounded to him while he was on the witness stand both before and after he was found to be a compellable witness, contends that since he was not a compellable witness he should not have been held to be in contempt and that he had a right to refuse the offer of immunity. The State, on the other hand, although conceding that a witness who testifies before a grand jury without invoking his privilege against self-incrimination is not thereby estopped, absent a grant of immunity, from asserting the privilege in a subsequent criminal proceeding, contends in this case that the appellant, by voluntarily testifying before the grand jury, waived his privilege and became a compellable witness at the trial of the indictee. The State also contends that the appellant became a compellable witness when he was offered immunity and that the appellant did not assert his privilege in the proper manner.

We think the state of the record is such as to compel a reversal of the order of court finding the appellant to be in contempt.

With respect to the claim that the appellant testified before the grand jury, the record is not conclusive. While it appears that the appellant was summoned and appeared before the grand jury at least twice, there is no evidence to support the supposition that he testified there to matters that are material here. On the record therefore it is not possible to determine whether or not the appellant waived his privilege against self-incrimination. Nor, for the reasons stated below, is it necessary to decide at this time whether or not the appellant became a com-

pellable witness when he was offered immunity from prosecution at the trial of the indictee.

The basic reason for reversal is that the privilege, if in fact one existed, was not properly asserted. Ordinarily the privilege of refusing to testify cannot be asserted by a witness after being sworn until a question, the answer to which would tend to incriminate him, is put to the witness. Whether the answer thereto has or might have such tendency is a matter for the trial court to decide in the first instance. And if a witness is aggrieved by being compelled to answer the question, he may appeal to a higher court.

In *Royal v. State,* 236 Md. 443, 204 A. 2d 500 (1964), we set forth (at pp. 447-48) the practice to be followed in invoking the privilege against self-incrimination:

> "The proper course of procedure is for the witness to wait until a question has been propounded which tends to incriminate him and then decline to answer it. * * * Likewise, if further interrogation is pressed as is often the case, the witness should answer the questions, one by one when propounded, or claim his privilege to decline answering; otherwise, since it cannot be known beforehand which he will do, the court would be unable to rule whether an answer to the particular question might incriminate the witness."

See also *Midgett v. State,* 223 Md. 282, 164 A. 2d 526 (1960), *cert. den.* 365 U. S. 853 (1961); *Chesapeake Club v. State,* 63 Md. 446 (1885); 98 C.J.S., *Witnesses* § 436.

The proposition that the privilege cannot be asserted in advance was stated in 8 Wigmore, *Evidence* (McNaughton Rev.), § 2268 (at p. 403) in this manner:

> "It cannot be known beforehand whether he will plead the privilege. * * * Besides, to prevent the question would be to convert the *option* [privilege against self-incrimination] into a *prohibition.* * * * Accordingly, it is almost universally conceded that the questions may be put to the *witness on the stand."* (Italics ours.)

It is only after a question has been asked, and the privilege is asserted, that the court may rule on the propriety of the privi-

lege or the compellability of the witness. It is only at that time, too, that a contempt citation may follow. See *Hutcheson v. U. S.*, 369 U. S. 599 (1962); *U. S. v. Harmon,* 339 F. 2d 354 (6th Cir. 1964), *cert. den.* 380 U. S. 944 (1965); *Re Neff,* 206 F. 2d 149 (3rd Cir. 1953); *Marcello v. U. S.,* 196 F. 2d 437 (5th Cir. 1952); *U. S. v. Gilboy,* 160 F. Supp. 442 (M. D. Pa. 1958); *U. S. v. Malone,* 111 F. Supp. 37 (N. D. Cal. 1953); *Kindt v. Murphy,* 227 S. W. 2d 895 (Ky. App. 1950); *State v. Hall,* 238 N. W. 302 (S. Dak. 1931); *Ex Parte Stice,* 11 Pac. 459 (Cal. 1886).

While it was improper for the appellant to assert an over-all privilege before any questions were asked of him, he thereafter answered such questions as were propounded to him by his counsel and the State failed to ask any. This, perforce, did not constitute a basis for holding the appellant in contempt. Had the State, after the appellant stated that he did not want to testify, asked a question and the trial court had ruled that it had to be answered because it was not incriminatory, then the appellant could have been found to be in contempt for refusing to answer subject to his right of appeal. But again, since no questions were asked by the prosecuting attorney with regard to matters material to the criminal cases then on trial, there was no contempt.

*Order reversed and case remanded for further proceedings; Howard County to pay the costs.*