## JAMES GAYLORD, JR. *v.* STATE OF MARYLAND

[No. 11, September Term, 1967.]

*Decided December 7, 1967.*

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*David S. Harris,* with whom was *Lawrence B. Coshnear* on
the brief, for appellant.

*Fred Oken, Assistant Attorney General,* with whom were
*Francis B. Burch, Attorney General, Charles E. Moylan, Jr.,
State's Attorney for Baltimore City,* and *James F. Garrity, As-
sistant State's Attorney for Baltimore City,* on the brief, for ap-
pellee.

PER CURIAM.

Appellant, James Gaylord, Jr., was tried in the Criminal
Court of Baltimore before Judge James A. Perrott, sitting
without a jury, on three indictments charging him with as-
sault with intent to murder Helene Shearn; assault with in-
tent to murder Ronnie King; and the rape of Helene Shearn.
He was found guilty of assault upon Helene Shearn; assault with
intent to murder Ronnie King; and the rape of Helene Shearn.

572

Appellant was sentenced to twenty years in the Maryland Penitentiary for rape and ten years in the Maryland Penitentiary for assault with intent to murder, sentences to run concurrently, and sentence was suspended on his conviction for assault.

There was evidence adduced at the trial from which the trier of the fact could find that on February 21, 1965, at about 12:15 a.m., Helene Shearn, accompanied by Perry Tilghman, returned to the apartment of her boyfriend, Ronnie (Romie) King, on the second floor at 1008 West Lanvale Street, in Baltimore City. When they arrived they found appellant Gaylord and King engaged in a loud argument. Appellant was demanding a drink and refused to leave. King finally succeeded in putting Gaylord out of the apartment, but he soon returned with a number of friends. When he was refused admittance, a loud clamor arose outside the door, with Gaylord demanding a jacket he claimed to have left in the apartment. When it appeared that the door would be broken down, it was opened by King. Gaylord and his friends rushed in and a general fight then ensued. Gaylord attacked King with a knife, stabbing him in the back and right shoulder. Tilghman left and King fought for a time, but finally escaped and summoned aid. He was hospitalized a week with his wounds. Helene Shearn was knocked to the floor unconscious. Her arm was broken and she sustained numerous injuries. When she regained consciousness, Gaylord, who remained in the apartment, stripped her clothes from her and proceeded to rape her. When the police arrived, she was found semi-conscious, lying on her back on the bedroom floor, naked, and in a pool of blood. When Gaylord, who was outside the apartment, was brought into the room she identified him as her assailant.

The sole question raised by appellant on this appeal is:

> Was there error committed by the trial court in connection with the testimony of Walter Shackleford and Lee Norris, witnesses called by the appellant?

At the conclusion of the State's case appellant proceeded to call Walter Shackleford, a 19 year old youth, as his first witness. After having been duly sworn, counsel for appellant re-

minded Shackleford that he had spoken to him at the Baltimore City Jail and advised him of his rights. He then said to the witness, "I would like to re-explain this to you today. You understand you do not have to testify today if you don't want to?" He then told the witness that anything he said could be used against him and it might be possible for him to be indicted by the Grand Jury, and "that he might be giving evidence against himself to a serious crime." The court then intervened and inquired of the witness if he had counsel. When the witness answered in the negative, the court then indicated that he would appoint counsel for him, and gave appellant's counsel the election to continue the case or withdraw the witness, to be recalled later after counsel had been appointed for him. Appellant's counsel advised the court that he would prefer to proceed and would take the witness out of turn. Whereupon the witness was withdrawn. Appellant then called Lee Norris, eighteen years of age, to the witness stand. After having been duly sworn, the witness was asked by appellant's counsel his age and if he had a lawyer to represent him. When he answered in the negative, appellant's counsel stated to the court, "Your Honor, for the record, we may have again the problem that we had with the preceding witness. I say possibly." The court then ordered the witness withdrawn until counsel could be appointed for him. Appellant's counsel offered no objection to this procedure and proceeded to call his next witness, who was Caroline Smith, and who testified as to her version of what had taken place in the apartment occupied by Ronnie (Romie) King.

After the completion of her testimony, the witness Walter Shackleford, with his court-appointed counsel present, was then recalled as a witness by the appellant. After first stating that he had decided to testify, he was advised by his court-appointed counsel that the nature of his testimony could seriously tend to incriminate him, and that his advice was to refuse to answer on the grounds of self-incrimination. The witness then stated he wished to avail himself of his counsel's advice. When asked by Appellant's counsel, "Were you in the premises known as 1008 West Lanvale Street?", the witness replied, "I refuse to answer because I seriously believe that any

answer I may give may tend to incriminate me." Counsel for appellant then asked, "Would you give a like answer to every question I ask you?" The witness replied, "Yes, sir." Whereupon appellant's counsel said, "That being the case, I would have no choice but abandon my questioning." The witness was then excused.

Lee Norris was then recalled to the witness stand by appellant. This witness was then advised by his court-appointed counsel that in his opinion the witness should not testify in this case, and that he should avail himself of his privileges under the Fifth Amendment. He was then asked by his court-appointed counsel if he wished to testify or follow his counsel's advice on the grounds that he honestly felt it would incriminate him. In answer to this question, the witness replied: "I'll take the Fifth Amendment." He was then asked by appellant's counsel, "Any question I ask you, you will refuse to answer. Is that my understanding of what you said?" To which the witness replied, "Yes." Appellant's counsel then stated, "That being the case, we would abandon, naturally, under protest." The witness was then withdrawn. Appellant's counsel then proceeded with his next witness.

Appellant raises no question as to the sufficiency of the evidence, but contends that the trial court deprived him of the benefit of the testimony of the witnesses Shackleford and Norris, and that such deprivation was so seriously prejudicial as to require the reversal of his conviction. He argues that he was improperly deprived of whatever benefit he might have obtained from the testimony of these witnesses because the witnesses were so intimidated by the trial judge's admonitions and excessive precautions that they finally claimed the privilege against self-incrimination and refused to testify.

The record fails to show that the appellant ever complained to the trial court of any alleged foreclosure of his right to continue the direct examination of these witnesses or either of them. No objection was ever registered to any failure to answer nor any request made to the court relating to a continuation of the direct testimony of either of the witnesses. Moreover, appellant made no objection to the withdrawal of the witnesses from the witness stand by the court in order that

counsel might be appointed for them, nor did he object, at the time of their recall to testify, to any remarks by the court to their counsel or to their counsel's advice to them.

Maryland Rule 1085 provides that on appeal the court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court. The sole question which appellant now seeks to raise for the first time was never presented to or decided by the lower court. In a long line of cases, the Court of Appeals has held that under Maryland Rule 885, a defendant in a criminal prosecution cannot raise for the first time on appeal an objection which was available to him at the trial and which he did not raise below. *Hays and Wainwright v. State,* 240 Md. 482, 214 A. 2d 573; *Hewitt v. State,* 242 Md. 111, 218 A. 2d 19. Since the question here presented was never raised before the lower court by way of objection to the court's handling of the witnesses Shackleford and Norris, or in any other manner, there is nothing before us for determination. *Lane v. State,* 226 Md. 81, 87, 172 A. 2d 400. It may be argued that the lower court was perhaps over zealous in protecting the rights of the witnesses Shackleford and Norris, but it must be remembered that they were both infants and were entitled to be informed that their testimony could seriously tend to incriminate them.

Actually, appellant created the situation of which he now complains. Appellant's counsel had talked to Shackleford at the City Jail, and it may be presumed that he was aware of what his testimony would be in the event he testified. He began his direct examination by advising the witness that he did not have to testify if he did not wish to, that anything he said could be used against him, that he might possibly be indicted by the Grand Jury, and that he may be giving evidence against him of a serious crime. It was only then that the trial court asked the witness if he was represented by counsel, and upon learning that he was not, decided to appoint counsel for him. What we have said of Shackleford, applies equally to Norris. Furthermore, the substance of the testimony claimed to have been foreclosed was unknown to the court, and from the record there is no indication whether, had Shackleford

and Norris testified to everything they knew about the case, it would have helped or hindered the appellant. Without any showing of benefit from the testimony of these witnesses, any contention that the appellant suffered prejudice without their testimony is mere speculation. In any event, since no proffer was made with respect to what testimony the appellant expected to elicit from these witnesses, no prejudice has been shown by their refusal to testify. See *Royal v. State,* 236 Md. 443, 448, 204 A. 2d 500; *Midgett v. State,* 223 Md. 282, 292, 164 A. 2d 526.

In the examination of neither Shackleford nor Norris did the appellant properly explore the right of the witness to invoke the privilege against self-incrimination. The appellant should have sought to develop the testimony of Shackleford and Norris question by question and applying to the court for appropriate action in the event of refusal to answer. See *Shifflett v. State,* 245 Md. 169, 173, 225 A. 2d 440; *Royal v. State, supra.* The court did not preclude the testimony of these witnesses, but rather the appellant prevented the court from effective inquiry into and ruling upon any claim of privilege by failure to propound questions. In any event, since no proffer was made with respect to what testimony the appellant expected to elicit from either Shackleford or Norris, no prejudice has been shown by their refusal to testify.

Since no objection was raised by appellant's counsel to the steps taken by the court to protect the rights of the witnesses Shackleford and Norris, nor was any objection raised to the advice given them by their court-appointed counsel, nor to their refusal to testify resulting therefrom, there is nothing before us for decision. Maryland Rule 1085. We must therefore affirm the judgment.

*Judgment affirmed.*