### GORDON C. GASKINS *v.* STATE OF MARYLAND

[No. 86, September Term, 1970.]

*Decided January 7, 1971.*

The cause was argued before MURPHY, C.J., and MORTON and MOYLAN, JJ.

*Karl H. Goodman* and *Jack B. Rubin* for appellant.

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *William Parsons Fennell, State's Attorney for Kent County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

A jury found appellant guilty of murder in the first degree without capital punishment; the court thereafter imposed a life sentence. He contends on appeal (1) that he was placed in double jeopardy, (2) that the court erred in admitting certain evidence and in instructing the jury, (3) that his Sixth Amendment right of confrontation was denied him, (4) that there was no corroboration of an accomplice's testimony sufficient to justify conviction, and (5) that he was denied due process of law by reason of the procedure followed at a pretrial lineup.

Appellant had been convicted of the same offense at a prior trial but the conviction was reversed on appeal for failure of the trial court to properly instruct the jury. *Gaskins v. State,* 7 Md. App. 99. Upon remand of the case for a new trial, the State adduced substantially the same evidence as it did in the original trial. It showed that on August 2, 1967, Walter Groebel, manager of the Suburban Country Club, had just returned to the Club from the bank when he was robbed of a payroll in excess of $7,000. He struggled with one of the robbers and was shot to death. The robbers—two men—fled the scene in an automobile. The State's principal witness at the first trial, William Gardner, refused to testify at the second trial, and his prior testimony was read into evidence over appellant's objection. In it, Gardner testified that he was the driver of the robbers' car and that it was appellant who had robbed and shot the victim.

I

The indictment against appellant contained nine counts, *viz.,* (1) felonious homicide in the usual form of indict-

ment which includes murder in the first degree, murder in the second degree, and manslaughter;[1] (2) assault with intent to murder; (3) robbery with a deadly weapon; (4) attempted robbery with a deadly weapon; (5) robbery; (6) assault with intent to rob; (7) assault; (8) larceny, and (9) receiving stolen goods. At the first trial, the jury returned a verdict of guilty of murder in the first degree; it was silent as to the remaining counts. On retrial, appellant claimed that the jury's silence was equivalent to an acquittal of all charges, except murder in the first degree; and that he would be twice placed in jeopardy if retried for these other offenses (including murder in the second degree and manslaughter). The trial judge rejected this claim, and the case was tried before the jury on all counts of the indictment. At the conclusion of the evidence, the court instructed the jury that although appellant was charged with offenses in nine separate counts, the only possible verdicts it could return were (a) guilty of murder in the first degree, (b) guilty of murder in the first degree without capital punishment, (c) guilty of murder in the second degree, (d) guilty of simple or armed robbery, or (e) not guilty. The jury found appellant guilty of murder in the first degree without capital punishment; it rendered no verdict as to the remaining counts.

Appellant reasserts the validity of his double jeopardy argument on appeal. He particularly urges that the double jeopardy violation as to the robbery charge, of which he was acquitted, prejudicially tainted his retrial for first degree murder in that it permitted the jury, under the felony murder rule, to return a verdict of first degree murder predicated on the perpetration of a killing committed in the course of a robbery.

The doctrine that jury silence with respect to counts of an indictment operates as an acquittal thereof was first enunciated in Maryland in *Hechter v. State,* 94 Md. 429. The court there overruled its earlier decision in *State v.*

---

1. *See McFadden v. State,* 1 Md. App. 511.

*Sutton,* 4 Gill 494, which held that a verdict of guilty upon some counts of an indictment without a finding on the other counts, was a defective verdict.[2] In *Glickman v. State,* 190 Md. 516, 523, the court held that since its decision in *Hechter,* "there has been no question that a verdict finding the traverser guilty under one count of an indictment and being silent as to the remaining counts, is a valid verdict and is equivalent to a verdict of not guilty as to the remaining counts." We have recognized the rule in a number of cases. *See Williams v. State,* 9 Md. App. 447; *Gibson v. State,* 8 Md. App. 1; *Stewart v. State,* 4 Md. App. 565; *Jenkins v. State,* 3 Md. App. 243; *Agresti v. State,* 2 Md. App. 278. None of the Maryland cases appears to have considered the rule in the context of its applicability to the constitutional prohibition against double jeopardy.[3] But on the facts of this case, we see no need to consider the question in that light since if it was error to retry the appellant on the counts of the indictment upon which no verdict was returned by the jury at the first trial, we think it was clearly harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U. S. 18.

In *Price v. Georgia,* 398 U. S. 323, 26 L.Ed.2d 300, the Supreme Court held that the constitutional prohibition against double jeopardy "is not against being twice punished, but against being twice *put* in jeopardy"; that the "twice put in jeopardy language of the Constitution relates to a potential, *i.e.,* the risk that an accused for a second time will be convicted of the same offense for

---

2. The verdict was deemed defective in *Sutton* on the apparent ground that an indictment, although consisting of several counts, each for a distinct offense, constituted in law an indivisible unit, to be treated as an entirety by a jury in making up its verdict; and, consequently, to be valid, the jury's verdict must finally pass upon and dispose of all the accusations contained in the indictment.

3. See, however, *Cichos v. State,* 208 N.E.2d 685 (Ind.), affirmed, *Cichos v. Indiana,* 385 U. S. 76, and compare *Cooper v. State,* 9 Md. App. 478. See also *Green v. United States,* 355 U. S. 184, for the proposition that where a jury returned a guilty verdict of a lesser offense (murder in the second degree), its failure to render a verdict on the greater offense (murder in the first degree) was tantamount to an acquittal thereof.

which he was initially tried." That an accused may have been unconstitutionally placed in jeopardy on some charges of an indictment, of which he was not convicted, would not call for reversal of a conviction of other charges in the indictment upon which he was properly tried unless the inclusion of the former charges so prejudiced the jury in its determination of the accused's guilt of the latter charges as to deprive him of a fair trial. *See Benton v. Maryland*, 395 U. S. 784.

In the present case, even if it be assumed that appellant was acquitted of the robbery charge at the first trial, the State would nevertheless be entitled to adduce evidence that the killing occurred during the course of a robbery and constituted, under the felony murder rule, murder in the first degree, as charged in the indictment. In *Parker v. State*, 7 Md. App. 167, we held, in considering the doctrine of merger of offenses, that robbery and murder are separate and distinct crimes; that murder and robbery do not arise from the same act; that the act of taking property from a person by means of force and fear is separate and distinct from the act of firing shots that kill him, even though each is a part of one general transaction and even though evidence as to the robbery is admissible as to the murder; and that because the status of a first degree classification may be attained by proof that the murder was committed during the perpetration of a robbery, does not make robbery an essential element of murder. In *Leet v. State*, 203 Md. 285, *Williams v. State*, 204 Md. 55, and *Ledbetter v. State*, 224 Md. 271, the Court of Appeals, in concluding that a conviction on one count may stand even in the face of an inconsistent acquittal on another count, stated that each count of an indictment is regarded as if it were a separate indictment, and the inquiry is whether the evidence is sufficient to support the conviction on that count without regard to the disposition of other counts.[4] We think,

---

4. In *Ledbetter*, this principle was enunciated in the context of an acquittal of robbery, but a conviction of first degree murder based on the felony murder rule, *viz.*, a killing committed in the perpetration of a robbery.

therefore, that the evidence pertaining to the robbery was properly admissible at the trial on the murder indictment; and as it does not appear that any other evidence was adduced to prove offenses of which the appellant may have been unconstitutionally tried that was not also properly admissible in proof of the murder indictment, we find, beyond a reasonable doubt, that the constitutional error, if any, was harmless under *Chapman. See Benton v. State,* 8 Md. App. 388. In so concluding, we do not mean to suggest that a finding of first degree murder under the first count of the indictment filed against appellant operated as an acquittal of the *lesser* included offenses of murder in the second degree and manslaughter. As to these, we think it entirely clear that, on retrial after reversal of the first degree conviction, an accused is not placed in double jeopardy when retried on these offenses. *See Rasnick v. State,* 7 Md. App. 564. *Cf. State v. Barger,* 242 Md. 616, and *Green v. United States, supra.*

## II

Appellant contends that the trial judge erred "in admitting the evidence obtained from two State's witnesses (Martin Moser and Franklin Lassiter) as affirmative evidence after a claim by surprise by the State."

### (A)

Moser testified that he observed two men sitting in a car at the scene of the crime immediately prior to its occurrence, and that one of them (claimed by the State to be appellant) had long red hair. He stated that he couldn't remember whether the man with the red hair occupied the driver's or passenger's seat. The State claimed to be surprised by this answer and over appellant's objection that Moser was a "hostile" witness, the prosecutor was permitted to read that part of Moser's testimony at the first trial wherein he said that it was the red haired man who was in the passenger's seat. After hearing his prior testimony on this point, Moser said "I'm reminded" and agreed that his prior testimony on the point was correct. Shortly thereafter, appellant called

Moser as his own witness; on cross-examination by the State, Moser again testified, without objection, that the man with the red hair occupied the passenger's and not the driver's seat. On these facts, we find no merit in appellant's argument that the court erred in not instructing the jury that Moser's testimony was not to be considered as substantive evidence. Apart from the fact that no request for such an instruction was ever made, we think the evidence was properly admitted as substantive evidence, and not merely as impeaching evidence to show the jury the reason that the witness was called. *See Green v. State,* 243 Md. 154; *Hernandez v. State,* 7 Md. App. 355; *Baldwin v. State,* 5 Md. App. 22; *Plumley v. State,* 4 Md. App. 671.

### (B)

Lassiter testified that he had a conversation with appellant about the Suburban Club several weeks prior to the crime, and conversed with him again shortly after the crime was committed. When pressed for the substance of these conversations, Lassiter appeared evasive. The prosecutor claimed surprise, based on Lassiter's testimony at the prior trial. The trial judge, after reviewing the prior testimony and observing the witness, concluded that Lassiter was a hostile witness; he stated that the prosecutor could interrogate him as a hostile witness with respect to the substance of his prior testimony, a position with which appellant expressly stated his concurrence before the jury. The prosecutor then read Lassiter's prior testimony to him concerning the substance of his conversations with appellant. Lassiter agreed in general that his prior testimony was correct. Under these circumstances, we think the testimony in question was properly admitted as substantive evidence and the trial court did not err in so admitting it. *See Barger v. State,* 2 Md. App. 565. *Cf. Elmer v. State,* 239 Md. 1.

### III

Appellant maintains that the court erred in its instructions to the jury because (a) it failed to give any in-

struction pertaining to manslaughter, and (b) it failed to satisfactorily explain its instruction on second degree murder. As to the latter contention, the appellant took no exception to the sufficiency of the second degree instruction and we do not consider the question. *See Canter v. State,* 220 Md. 615; *Parker v. State,* 4 Md. App. 62; Maryland Rule 756g.

Under the circumstances of this case, we see no reversible error in the court's refusal to instruct on manslaughter. The State's evidence was directed toward sustaining a first degree murder charge, either under the felony murder rule, or as a wilful, deliberate and premeditated homicide. The thrust of appellant's defense was that he was not the person involved in the crime. The only evidence in the case was that the killing was murder, and not manslaughter; consequently, the court's refusal to instruct on manslaughter—there being no evidence to support that charge—was not error. *See Gaskins v. State, supra,* and cases cited at page 105.

## IV

Appellant contends that the lower court erred in permitting Gardner's testimony at the prior trial to be read to the jury at the present trial. He argues that (a) the State failed to exhaust its remedies to compel Gardner to testify at the second trial (*e.g.*, by failure to advise him what the maximum penalty for contempt would be, failure to provide him with an attorney, failure to allow him to state his reasons for refusing to testify, and failure to ask him individual questions and then obtain a ruling on each such question). He further argues that his constitutional right of confrontation was not satisfied by the cross-examination of Gardner at the prior trial (1) because of newly discovered impeaching evidence which would cast doubt on Gardner's credibility and (2) because the jury was deprived of an opportunity to observe Gardner's demeanor.

At appellant's prior trial, Gardner testified, under a grant of immunity from prosecution, that he met appel-

lant for the first time in July of 1967; that appellant told him at that time that he heard that he (Gardner) was a good driver and could be trusted; that "a payroll job" was being "lined up from the inside"; and that the following day—the last Wednesday in July—they parked near the Suburban Country Club and walked onto and around the grounds together. Gardner had further testified at the prior trial that appellant picked him up in a 1963 or 1964 black Oldsmobile on the morning of August 2, and at that time had a red wig and a gold colored shirt; that they drove to the Suburban Country Club and parked near the front entrance, at which time he (Gardner) took over the driving duties and appellant put on the wig and shirt; that they proceeded to the Club's rear entrance and arrived at the clubhouse directly after Groebel's arrival; that while he (Gardner) remained in the car, appellant "jumped out" and grabbed the payroll, at which time a shot was fired; and that when appellant returned to the car with the money, he had a pistol in his hand. It was Gardner's testimony that he and appellant made good their escape and agreed to meet again that night to split the money among what appellant told him were four persons. That night they purchased some gasoline and set the Oldsmobile on fire on the streets of Baltimore City. Gardner stated that he did not receive a share of the money.

During a hearing on a motion for a new trial held following the prior trial, and also during trial of the present case, appellant urged the importance of newly discovered evidence upon Gardner's credibility. The alleged newly discovered evidence was in the form of statements by Isaac Jacobs, previously a cellmate of Gardner, that Gardner had told him that if he were again caught, he would implicate the wrong man and obtain immunity from the State. Jacobs so testified during appellant's second trial. Further, evidence was adduced concerning Gardner's psychological background which described him as psychopathic, egocentric, amoral, and willing to do anything for his own immediate gain. In this connection,

the prison psychologist testified on appellant's behalf at the second trial.

### Former Testimony Exception To The Hearsay Exclusionary Rule

In *Contee v. State,* 229 Md. 486, at 491, it was held:

"It is well settled that testimony taken at a former trial may be admitted, if it be shown that the witness is dead, insane, or beyond the jurisdiction of the court, or on diligent inquiry cannot be located, or that some other circumstance exists which shows that the witness who gave the testimony at the former trial cannot be procured as a witness at the second trial. [Citations omitted.] * * * The writers and authorities all agree that where there was an opportunity to cross-examine the witness in the former trial, there is no violation of the right to be confronted with the witnesses against the accused, under Art. 21 of the Maryland Declaration of Rights or under the Due Process clause of the Fourteenth Amendment to the Federal Constitution. * * *"

In *Contee,* the witness whose former testimony was sought to be used became insane subsequent to testifying at the first trial; she was deemed unavailable as a witness and her former testimony was used. We think a witness who steadfastly refuses to testify under the penalty of contempt is, in effect, "unavailable" as a witness. In *Johnson v. People,* 384 P. 2d 454, the Supreme Court of Colorado considered the precise question. It held (page 457):

"The general rule at the common law was that where a witness who had testified at a prior trial was unavailable at the time of the second trial, his testimony at the former trial once properly authenticated was admissible in the latter trial. Johnson concedes this to be the rule,

but contends that Sides was not "unavailable," but on the contrary not only "available" but actually present in court.

"A somewhat parallel situation is presented in *State v. Stewart*, 85 Kan. 404, 116 P. 489, where a witness for the State in a prosecution for murder was physically present at the trial but refused to testify. In permitting the introduction of the testimony given by that witness in a preliminary examination into the charge on which the accused was then on trial, the Kansas Supreme Court said that the true test was not so much the "unavailability" of the witness, but the "unavailability" of his testimony and that a witness who—though present—refused to testify is just as surely "unavailable" as the witness who stepped across a state line to avoid service of a subpoena. [Citations omitted.] * * *."

In accord with *Contee* and *Johnson*, we hold that Gardner, though present in the courtroom, was "unavailable" *as a witness. See also Lindsay v. State*, 2 Md. App. 330; *Britton v. State*, 2 Md. App. 285. The element of necessity, which was the source of the former testimony exception to the hearsay rule, is clearly present in this case, and we think the use of Gardner's prior testimony was proper. In so concluding, we have considered, but on the record before us find no merit in, appellant's various arguments that the State did not exhaust all remedies open to it to compel Gardner to testify.[5]

---

5. Gardner told the court that he refused to testify because threats had been made on his family. The prosecutor offered the service of his office in protecting Gardner's family. He still refused to testify. The record shows that Gardner was then serving a sixty-year prison term. Under the circumstances, we do not think the court committed reversible error in not first advising Gardner of the maximum penalty for contempt, or in appointing a lawyer for him, or in refusing to permit him to state other reasons for his refusal to testify. And as no question of self-incrimination was involved in Gardner's refusal to testify, the court did not err in failing to ask Gardner individual questions and then rule on the propriety of each such question in light of Gardner's response thereto. *Cf. Shifflett v. State*, 245 Md. 169.

## Constitutional Right of Confrontation

The Sixth Amendment right of accused persons to confront the witnesses against them, now applicable to the states through the Fourteenth Amendment, is not violated by admitting the prior testimony of an unavailable witness where the accused, represented by counsel, was afforded an adequate opportunity to cross-examine the unavailable witness at the prior trial. *California v. Green,* 399 U. S. 149, 26 L.Ed.2d 489; *Douglas v. Alabama,* 380 U. S. 415; *Pointer v. Texas,* 380 U. S. 400; *Mattox v. United States,* 156 U. S. 237; *Contee v. State, supra; Britton v. State, supra.*[6] And this is so despite the fact that some demeanor evidence which would have been relevant in resolving the credibility of the witness is forever lost. *California v. Green, supra,* at page 498; *Mattox v. United States, supra,* at page 243.

In the present case, appellant does not claim that he was limited in any way in the scope or nature of his cross-examination of Gardner at the first trial.[7] He simply urges that the newly discovered evidence, heretofore set forth, was of such a nature as to require exclusion of the former testimony altogether because it "went to the heart" of Gardner's credibility as a witness, and consequently materially increased his ability to impeach Gardner as a witness before the jury. Otherwise stated, appellant claims that Gardner's former testimony should not have been admitted since in view of the newly discovered evidence, his opportunity for cross-examination was not adequate. While it may have been that the jury would have had a better opportunity to assess Gardner's credibility had he been cross-examined with reference to the alleged new evidence, in the circumstances of this case, we are persuaded that his constitutional right of confrontation was not thereby denied him. No question of Gardner's basic competence to testify is here involved.

---

6. Where the unavailability of the witness is caused by the State's negligence or indifference, the former testimony may not be admitted. *See Barber v. Page,* 390 U. S. 719; *Motes v. United States,* 178 U. S. 458.

7. The same counsel represented appellant at both trials.

The impeaching evidence was introduced before the jury by means of witnesses called to testify on appellant's behalf, and in light of its nature it is unlikely that impeachment by such means proved materially less effective than impeachment by cross-examining Gardner. The right to impeach and the right to confront are not equivalent and we see no sound reason to conclude in this case that appellant's constitutional rights were so circumscribed by the procedure followed as to require that he be granted a new trial. See 6 Criminal Law Bulletin 179 (1970) — "Prior Recorded Testimony Exception to the Hearsay Rule in Criminal Cases."

## V

Appellant contends that both Gardner and Lassiter were accomplices, upon whose uncorroborated testimony he could not properly be convicted. As a consequence, he claims that there was no legally sufficient evidence of his criminal agency to carry the case to the jury and that the court thus erred in denying his motion for judgment of acquittal.

In reversing the judgment in the prior trial, we reviewed the testimony of Gardner and Lassiter. We concluded therefrom that Gardner was clearly an accomplice; as to Lassiter, we held that there was evidence before the jury from which "it could have concluded, at the least, that Lassiter was an accessory before the fact, and, as such, also an accomplice." *Gaskins v. State, supra,* at page 104. The trial court in the present case fully instructed the jury as to the law requiring corroboration of accomplice testimony; it instructed the jury, as a matter of law, that Gardner was an accomplice and that whether Lassiter was also an accomplice was a question for it to determine from the evidence.[8] As the testimony of Lassiter was substantially identical to that given by

---

8. We have repeatedly held that when the evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions. *See Christopher v. State,* 9 Md. App. 277, 281.

him at the former trial, and as Gardner's prior testimony was used at the present trial, we think the court's instructions were entirely correct. Whether the jury ultimately concluded that Lassiter, like Gardner, was an accomplice whose testimony required corroboration cannot be known. But we think it plain that the denial of the motion for judgment of acquittal at the end of the State's case was proper. As the evidence at that juncture of the trial permitted the jury to find that Lassiter was not an accomplice, and as Lassiter had testified, in effect, that appellant admitted knowledge of and/or participation in the crime to him shortly after its commission, Gardner's testimony directly implicating appellant was thereby sufficiently corroborated to permit the question of appellant's criminal agency to go to the jury. *See Devers and Webster v. State,* 9 Md. App. 366. Moreover, the State had adduced other testimony, apart from Lassiter's, which sufficiently corroborated Gardner's testimony to support a guilty verdict. We do not repeat it here; its substance is outlined in detail in our opinion in the prior *Gaskins* case. Corroborative of Gardner's testimony, it tends to show, like Lassiter's testimony, that the appellant participated in the commission of the crime or was identified with the perpetrators thereof. *See Wise v. State,* 8 Md. App. 61.

## VI

Appellant finally contends that the pretrial lineup in which the witness Gary Beach identified him as the "man who had the build and size and color of the man who was at the Country Club when Mr. Groebel was shot" was an unfair lineup because of the dissimilarity of his skin coloration with that of the other lineup participants. The trial judge heard evidence out of the jury's presence and concluded that the differences in skin coloration were not such as to make the lineup an impermissibly suggestive one violative of appellant's right to due process of law. On the record before us, we find no error in the court's ruling.

*Judgment affirmed.*