## WILLIAM O. GARDNER *v.* STATE OF MARYLAND

[No. 209, September Term, 1970.]

*Decided January 8, 1971.*

The cause was argued before ANDERSON, MORTON, and MOYLAN, JJ.

*Basil Wadkovsky* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William Parsons Fennell, State's Attorney for Kent County,* and *L. Robert Evans, Deputy State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, William O. Gardner, was cited for direct contempt of court by Judge George B. Rasin, Jr., in the Circuit Court for Kent County for his refusal to tes-

tify as a State's witness in the jury trial of Gordon C. Gaskins for murder.

On appeal he alleges (1) that the contempt citation was erroneous because of the failure of the trial judge to order him to answer specific questions as they were put to him on a one-by-one basis and (2) that his two-year sentence for the contempt, to be served consecutively with the sixty-year sentence he was already serving, constituted cruel and unusual punishment.

The second contention can be disposed of briefly. The appellant acknowledges that the two-year sentence imposed was within the common law sentencing prerogative of the presiding judge but maintains that the "sentence for contempt was wholly disproportionate to the offense." With respect to sentencing for common law crimes, this Court said in *Lynch v. State,* 2 Md. App. 546, 564 :

> "In the case of common law crimes, the only restrictions on sentence are that it be within the reasonable discretion of the trial judge and not cruel and unusual punishment. In the imposition of sentence, the court must not only consider the accused, but in cases of serious import, the example to others of like inclination."

In the case at bar a mere concurrent sentence for a man already sentenced to sixty years' imprisonment would have been an empty gesture and an exercise in futility. The defendant in the case, Gaskins, was on trial for a first-degree murder perpetrated in the course of a notorious armed robbery. At an earlier trial in Howard County in 1968 of Gaskins for the same crime, the appellant, appearing as a compellable witness under a grant of immunity from prosecution, had been a key State's witness. That earlier conviction for first-degree murder was reversed by this Court because of the failure of the trial judge to give a required jury instruction, *Gaskins v. State,* 7 Md. App. 99, and the retrial was moved to Kent County. The refusal of the appellant at the retrial to obey the directive of the trial judge to testify represented both

a violation of a lawful order of court and a flagrant jeopardizing of the outcome of "a case of serious import." See *Johnson v. State*, 9 Md. App. 37.

Furthermore, as this Court said in *Minor v. State*, 6 Md. App. 82, 91:

> "A sentence will be reviewed by this Court only if it was dictated not by a sense of public duty but by passion, prejudice, ill will or any other unworthy motive. *Gee v. State*, 2 Md. App. 61, . . ."

We find no evidence of passion, prejudice, ill will or any other unworthy motive on the part of the trial judge. The sentence was neither cruel nor unusual and we will not disturb it.

The trial of Gaskins for murder was held before a jury in Kent County on January 19, 20 and 21, 1970. On the first day of trial, the appellant was called as a witness. After giving his name, his age, his present address as the Maryland Penitentiary and his former occupation, the appellant was asked if he knew Gordon Gaskins. His response was "Well, I can't answer that. First of all, I would like to say something." He was asked the question a second time and again responded "I can't answer that." At that point, the jury was excused from the courtroom. An extended colloquy in open court, with the appellant still under oath, then took place between the trial judge, the appellant and the Deputy State's Attorney for Baltimore County. The appellant asserted consistently and adamantly that he was present at the trial unwillingly and that he was not going to testify. At no time did he assert any privilege against self-incrimination under the Fifth and Fourteenth Amendments of the Federal Constitution or under Article 22 of the Maryland Declaration of Rights. He did assert that his refusal to testify against Gaskins was based upon his fear of possible retaliatory measures that might be directed against his family.

The appellant was then dismissed from the stand and left the courtroom while legal argument took place. Al-

though it is not controlling to this decision, a candid revelation made by counsel for Gaskins in the course of the ensuing legal argument does throw light on the factual situation here involved. Counsel there stated:

> "There's a problem here in that in this particular case and the facts are going to show or would show if he did testify that really the reason Mr. Gardner is not testifying is that subsequent to the last trial he got sixty years and the State didn't do anything for him. That's why he's not testifying. Really, that's what it boils down to."

Shortly thereafter the appellant was called back into the courtroom. In open court, the State reiterated its grant of immunity to the appellant and also made an offer to pay all expenses and make arrangements for the transportation of the appellant's wife and children to the town of their origin in an unnamed southern state where they "could hide out." The State also offered to provide protection for the family of the appellant by stationing a police office near his residence. The trial court then specifically directed the appellant to testify as to what he knew about the case and warned him that his failure to testify would lead to a citation for contempt of court. The appellant again adamantly refused to testify. At that point, the trial judge found the appellant in contempt of court but recessed the proceedings until 10 o'clock the following morning. The judge told the appellant that he could think the situation over and if he changed his mind overnight, the Court would strike out the citation.

On the following morning, January 20, the appellant was recalled to the stand, again outside the presence of the jury, and asked if he was then willing to go forward and testify. He again steadfastly refused. The contempt citation was therefore not rescinded and on February 9, 1970, the appellant was brought into court and received the two-year sentence for the contempt.

We think it clear that the appellant was a compellable witness and that his refusal to testify constituted "the

disobedience or resistance by any . . . witness . . . to any lawful . . . rule . . . or command of the said courts" within the prohibition of Article 26, Section 4, Annotated Code of Maryland. We also think it clear that his conduct represented a significant impediment to the orderly administration of criminal justice, for as this Court pointed out in the companion case of *Gaskins v. State,* 10 Md. App. 666, "We think a witness who steadfastly refuses to testify under the penalty of contempt, is, in effect, 'unavailable' as a witness."

The appellant relies exclusively on the procedures suggested by *Shifflett v. State,* 245 Md. 169, and *Royal v. State,* 236 Md. 443, but that reliance is misplaced. *Shifflett* and *Royal* both involve the privilege against self-incrimination which is not involved in the instant case. Because of the elusive character of that privilege which may vary from question to question, the mandate of *Shifflett* and *Royal* is that the questions must be propounded to the recalcitrant witness on the stand on a one-by-one basis. The witness must then evaluate each question on a one-by-one basis and decide, question by question, whether to assert his privilege or not. The trial judge must then, in turn, decide on a question-by-question basis whether the privilege has been properly asserted or whether he alternatively must compel the answer under threat of contempt.

No such rationale is present in the instant case and to follow blindly the guidelines of *Shifflett* and *Royal* where those guidelines would not be serving their original purpose would be to exult form above substance. This we decline to do. See *Gaskins v. State, supra,* n. 5.

*Judgment affirmed.*