**Doyle Delmar ROYAL, Appellant,**

v.

**STATE OF MARYLAND, Appellee.**

**No. 75–1589.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1975.

Decided Jan. 26, 1976.

---

We are satisfied that the Court of Appeals of Maryland properly rejected the confrontation contention discussed in the dissenting opinion of our brother Winter. *See Royal v. State of Maryland,* 236 Md. 443, 204 A.2d 500. We will not repeat the extended discussion of the matter in the state court. The two witnesses did take the stand and were sworn, and they answered all questions propounded to them. Counsel for the defense stopped short of questions about Royal's alibi claim that he was with his two co-defendants shortly before the robbery, but was left by them and later picked up by them after the robbery had been completed. Doubtless he did so because he could think of no way to frame the question without reference to the participation by the witnesses in the robbery, a matter as to which the witnesses had invoked their Fifth Amendment privilege.

*Affirmed.*

Stanley H. Miller, Baltimore, Md. [Court-appointed counsel], for appellant.

Bernard A. Raum, Asst. Atty. Gen. of Maryland, Baltimore, Md. (Francis B. Burch, Atty. Gen. of Maryland, and Clarence W. Sharp, Asst. Atty. Gen. of Maryland, Chief, Crim. Div., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and FIELD, Circuit Judges.

PER CURIAM:

Upon consideration of the briefs, the record and the argument in this case, we find no reversible error.

■ The lineup conducted by the police was impermissibly suggestive, but, in light of all the positive identification testimony and strong evidence of guilt, admission of the evidence concerning pretrial identification was harmless beyond a reasonable doubt.

WINTER, Circuit Judge (dissenting):

With the majority I agree that the lineup conducted by the police was unduly suggestive. But the fact that four of the state's five witnesses were permitted to testify as part of the state's case that they identified Royal as the armed robber at the lineup leads me to conclude that their testimony was not harmless beyond a reasonable doubt despite their in-court identifications and other strong evidence of guilt. On this basis, I would direct that the writ issue. I am also inclined to think that the writ should issue because Royal was denied his right of confrontation by the manner in which fifth amendment claims of two of his co-defendants were observed, but I place my dissent primarily on the first ground rather than the second.

I

Unquestionably Royal's lineup was unduly suggestive.* Those in attendance

---

* Royal also claims he was denied assistance of counsel at his lineup, citing *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California,* 388 U.S.

263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). *Wade* and *Gilbert* are not retroactive, *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and they do not apply to

at the lineup were looking for a short, slight man who limped. Royal was the only man in the lineup who possessed these characteristics. The other participants were three or more inches taller and sixty or more pounds heavier and they did not limp. Moreover, the circumstances of the lineup permitted the witnesses to detect Royal's limp. Witness Aiello testified:

> The way I identified him was he was limping, and I noticed that in the store, and that is how I identified him. . . . He walked out on the stage. He tried not to limp, and that even made it more noticeable.

Witness Selby testified: "Well, I should say [I picked him out] because he was short. He was the only short man in the line-up."

Maryland argues that the witnesses' independent in-court identification of Royal as the robber was sufficiently unequivocal to purge the taint of the suggestive lineup. *See Coleman v. Alabama,* 399 U.S. 1, 5–6, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). However, direct evidence of identification at the lineup was admitted. Thus, unless the harmless error doctrine is applicable, habeas relief must be granted. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

At trial, five witnesses identified Royal as the robber. Four of these five witnesses also testified that they had previously identified Royal at the lineup. I cannot escape the conclusion that direct evidence of a lineup identification is likely to have significant probative value, even when, as here, it is admitted along with independent identification of the defendant by the same witnesses. The fact that the witnesses had identified the defendant at a time when their memories were fresh may make it more difficult for the defense to persuade the jury that the witnesses might be mistaken. Further, the jury may well find the lineup identification more persuasive then the one-on-one in-court identification, since a lineup, if properly conducted, affords a test of a witness's perception, memory, and veracity which is lacking in court. I therefore cannot view the lineup evidence given by four witnesses in this case as merely cumulative or harmless. The likelihood that the jury would have reached the same result without it is not beyond a reasonable doubt.

## II

Royal sought to establish an alibi defense to the robbery charges. He testified that he had been with his two codefendants, Gale and Elliott, before and after the time of the robbery, but that they dropped him off on a street corner immediately prior to perpetrating the crime and then picked him up immediately afterward. Royal called Gale and Elliott to corroborate his testimony. Both had already pled guilty to the robbery and been sentenced. The trial judge instructed them that they could "refuse to take the stand" if they believed that they might incriminate themselves. Both refused to testify. Royal's attorney questioned them briefly about their reasons for invoking the fifth amendment privilege. Elliott stated that he had "other legal matters pending. . . ." Gale said there were "things that could incriminate me yet." Royal's counsel did not press further with his questioning. However, the court made it clear that in its view the witnesses could not be compelled to submit to specific substantive questions. In

---

pre-indictment lineups, *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Royal was tried in 1964 and the lineup was conducted prior to his being formally charged, so that he falls squarely within the rules of *Stovall* and *Kirby.* Royal also relies on certain decisions of the Maryland Court of Appeals which allegedly adopt a more generous formulation of the right to counsel at a lineup than the authorities cited. But in this habeas corpus proceeding the court should confine itself to a consideration of federal law as expounded by the Supreme Court.

response to a question about his basis for asserting the privilege, Elliott inquired of the court: "Your Honor, does [answering] that leave me open for more questions?" The court answered in the negative.

The right to compulsory process is binding on the states. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). This right "means more than a right to compulsory attendance of the witness at trial; it includes the right to have the testimony of that witness heard." *Holloway v. Wolff,* 351 F.Supp. 1033, 1037 (D.Neb.1972), *rev'd on other grounds,* 482 F.2d 110 (8 Cir. 1973). However, the courts have generally agreed that "the Sixth Amendment's right of compulsory process must give way to the subpoenaed witness' personal Fifth Amendment right against self-incrimination." *Johnson v. Johnson,* 375 F.Supp. 872, 875 (W.D.Mich.1974) (dictum). *See Myers v. Frye,* 401 F.2d 18, 20–21 (7 Cir. 1968); *Murdock v. United States,* 283 F.2d 585, 587 (10 Cir. 1960); *Holloway v. Wolff, supra,* at 1037–38. Thus, if Gale and Elliott properly asserted the fifth amendment privilege, Royal must bear the consequences. Alternatively, if the trial court erroneously sustained the witnesses' invocation of the privilege, Royal was denied his sixth amendment right to compulsory process.

I have no difficulty in finding that in the circumstances of this case, Gale and Elliott could properly have declined to answer certain specific questions about the robbery on the ground that their answers might tend to incriminate them. *See Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). While they had already pled guilty and been sentenced, they might well have feared further prosecution, and the record discloses nothing from which I can infer that such a fear would have been unreasonable.

While Gale and Elliott had a right to invoke the fifth amendment privilege in response to specific questions, they were not defendants in Royal's trial, and they had no right to decline to testify altogether. The trial court instructed them that they could remain totally silent. This was overkill. It was a factor virtually ignored by the Court of Appeals of Maryland in *Royal v. State of Maryland,* 236 Md. 443, 204 A.2d 500 (1964), thereby resulting in a decision the correctness of which I question. To my mind the fact of the instruction also explains why counsel failed to pose more than perfunctory specific questions to the witnesses. It is impossible to know what the witnesses would have done if confronted with specific substantive questions. Conceivably their fears of self-incrimination related to events completely different from those at issue in Royal's trial, so that if properly advised as to the scope of their privilege, they could have testified in Royal's behalf and still have avoided incriminating themselves. Admittedly, it would have been difficult for laymen to draw this line, and it might have been necessary for the court to appoint counsel to advise the witnesses.

Where the witness's fifth amendment right and the defendant's sixth amendment right conflict, the court's ruling as to the scope of the fifth amendment privilege assumes critical importance. Any error will usually be prejudicial to one party or the other. In this case, I am inclined toward the view that the trial judge's ruling denied Royal his sixth amendment right to compulsory process. The issue need not be resolved since I believe that Royal's conviction must be reversed in any event because of the unduly suggestive lineup and the possibility that it led to misidentification. My point is that I would admonish the trial judge on retrial to use care properly to instruct, and, if necessary, to appoint counsel to advise the witnesses as to the scope of their privilege.